## McKennon v. Winn.

[*Opinion filed June 30, 1893.*]

1. REAL ESTATE—*Parol Contract*- By the common law, prior to the enactment of the statute of frauds, 29 Charles Second, Chap. 3, contracts for the sale of real estate, or any interest therein, were not required to be in writing.

2. INDIAN TERRITORY—*Laws in force*—There was no law in the Indian Territory regulating the making of contracts for the sale of real estate, or any interest therein, at the time of the approval of the act of congress establishing a United States court in that Territory, by act of March 1, 1889.

3. SETTLEMENT OF OKLAHOMA—*Common law*--When the people from all parts of the United States, on April 22, 1889, settled the country known as Oklahoma, they brought with them the established principles and rules of the common law as recognized and promulgated by the American courts; and a parol contract for the sale of real estate, or any interest therein, made between April 22, 1889, and May 2, 1890, is not invalid as being prohibited by any rule of the common law.

4.  GOVERNMENT LANDS —*Contracts Concerning*— Unless forbidden by positive law, contracts made by actual settlers on government lands, concerning their possessory rights and the title to be acquired from the United States, are valid as between the parties to the contract.

*Appeal from the District Court of Ok'ahoma County, Hon. John G. Clark, Judge. Reversed.*

*Fred M. Elkins*, for Appellant.

*Sweet & Keyes*, for Appellee.

The opinion of the court was delivered by,

BURFORD, J.: The appellant filed his complaint in the court below to enforce the specific performance of a contract for the conveyance of real estate situated in Oklahoma City, Oklahoma county, Oklahoma Territory.

A demurrer was filed to the complaint, alleging as grounds:

"*First.* That the court has no jurisdiction of the person of defendant, or the subject of the action.

"*Second.* That the complaint does not state facts sufficient to constitute a cause of action."

The demurrer was sustained, to which the appellant exepted and brings the case to this court by appeal.

The amended complaint to which the demurrer was sustained (omitting title) reads as follows:

"Plaintiff herein, Francis R. McKennon, complains of the defendant, Harvey R. Winn, and says:

"That heretofore, to-wit, on the 22d day of April, A. D. 1889, the said defendant entered upon and occupied as a townsite claimant under the public land laws of the United States, a certain tract of land in the city of Oklahoma City, in Oklahoma county, in the Territory of Oklahoma, and more particularly described as follows, to-wit: Lots numbers 11 and 12 in block 9, in said city, county and Territory, the same being a part of the S. E. $\frac{1}{4}$ of Sec. 33, Twp. 12 N. of range 3 W. of the Indian meridian.

"That afterwards, to-wit, on the —— day of April, A. D. 1889, the said defendant being an occupant still

of said tract as above stated, and being desirous of en-closing said tract with a substantial fence and erecting thereon a house, and said defendant not having suffi-cient means (money) wherewith to enclose and other-wise improve this tract, the said defendant entered into an oral agreement with this plaintiff whereby it was mutually agreed and understood by and between the said defendant and this plaintiff, that the said plaintiff should furnish to the said defendant a sufficient sum of money wherewith to enclose said tract with a substan-tial fence; and that said plaintiff should furnish one-half of the amount of money necessary to erect upon said tract such a house as the said plaintiff and defendant might thereafter agree upon, and in case the said de-fendant could not furnish sufficient money to pay de-fendant's portion or share (one-half) of the cost of such house, then, in the latter event, the plaintiff was to lend to the said defendant a sum of money sufficient to pay for said defendant's share of the same.

"That the said defendant should continue in the oc-cupancy of said tract and that the said defendant should hold and occupy the said tract with a view to acquiring title thereto from the United States govern-ment, and that such title should be acquired and held for the benefit of said defendant and plaintiff in equal portion or shares.

"That afterward, to-wit, on the —— day of May, A. D., 1889, it was agreed by and between the said plaintiff and defendant, that the said tract should be occupied and held by the said defendant, the lot num-ber 11, for the benefit of this plaintiff, and the lot number 12 for the benefit of said defendant.

"That in pursuance of the aforesaid agreement, this plaintiff heretofore, to-wit, on the twenty-eighth day of April, A. D., 1889, furnished and paid unto the said defendant a sum of money, to-wit, fourteen dollars and eighty-five cents, in full payment of the entire costs of a certain fence erected upon and enclosing said tract, as in the foregoing agreement provided, and the said defendant then and there accepted said amount of money in pursuance of said agreement.

"That in pursuance of the aforesaid agreement said parties caused to be erected upon the said tract a small frame house at a cost of the value of thirty dollars, and that this plaintiff afterwards, to-wit, on the —— day of May, A. D. 1889, paid to the said defendant the sum of five dollars, in part payment of this plaintiff's share of the cost of said house, and said sum was then and there accepted by said defendant as such part payment. At the time last stated this plaintiff instructed defendant to call upon one Felix L. Bone, the said Bone being then and there this plaintiff's agent, for the balance of the share of this plaintiff of the cost of said house, to-wit, the sum of ten dollars, and the said defendant then and there agreed to do so. That on the day and dates last above stated the said Bone had in his possession and subject to the order of this plaintiff moneys of this plaintiff greatly in excess of the amount last above stated, and on the said last above named day this plaintiff instructed said Bone to pay to this defendant the sum of ten dollars.

"That in pursuance of and under the terms of the aforesaid agreement this plaintiff heretofore, on to-wit, the —— day of —————— A. D., 1889, went into and took possession of the said lot 11, and occupied same.

"That afterwards, to-wit, on the 3d day of June, A. D. 1889, this plaintiff learned from the said Bone that the said defendant had not called upon the said Bone for the sum of ten dollars; that on the day last above stated this plaintiff offered to pay and tendered to said defendant the said sum of ten dollars the balance due from plaintiff to defendant on account of the said house erected, and the said defendant then and there refused to accept or receive the same, and said defendant then and there refused and has ever since and does now still refuse to fill defendant's part of said agreement.

"That heretofore, to-wit, on the —— day of ———, A. D., 1890, said defendant made application to Board No. 2, townsite trustees, for a deed to said tract of land, to-wit, lots numbers 11 and 12, in block number 9, and on the 15th day of January, A. D. 1891, said lots were by said board awarded to said defendant, and

on the —,— day of ————, A. D. 1891, said board issued to said defendant a deed therefor.

" That said board of trustees were duly appointed by
the secretary of the interior and qualified as such trustees in accordance with the laws of the United States.
That heretofore, to-wit, on the 3d day of September,
1890, said bòard, in pursuance to the authority vested
in them, entered at the United States land office the S.
E. ¼ of Sec. 33, Twp. 12 N. of range 3 W. of the Indian
meridian, of which last named tract said lots number 11
and 12 in block number 9 are a part and parcel, and
patent for the same was duly issued to said board of
trustees.

" That on the 30th day of April, A. D. 1891, this
plaintiff demanded of defendant that said defendant
should convey to plaintiff, by deed, all his, the said
defendant's title to lot 11 in block 9 aforesaid, and then
and there plaintiff tendered to said defendant the sum
of ten dollars in good and lawful money of the United
States, in payment of the sum due from plaintiff to
defendant as aforesaid, and the said defendant then and
there refused to execute said conveyance, and refused
to accept or receive the sum so tendered. The plaintiff
at all times had been ready and willing to pay said sum
of ten dollars and now brings and pays into the court
the said sum of ten dollars, in fulfillment of plaintiff's
agreement and for the use and benefit of the said defendant.

" That plaintiff has complied in every particular with
and fulfilled all the provisions of the aforesaid agreement, where not prevented by said defendant as herein·
before stated.

" That said defendant has wholly failed and refused
and now fails and refuses to comply with and fulfill the
provisions of the aforesaid agreement to the great
damage of this plaintiff.

" Wherefore plaintiff prays that it be adjudged that
the said defendant hold said lot number 11 in block 9
in trust for the use and benefit of this plaintiff, and that
the said defendant be decreed to convey said lot to this
plaintiff, and that in the event said defendant refuses to
convey said lot, a commissioner be appointed by the

court to execute such conveyance, and that plaintiff recover costs of this suit.

FRED M. ELKIN,

Attorney for F. R. McKennon.

COUNTY OF OKLAHOMA }
TERRITORY OF OKLAHOMA. }

Fred M. Elkin, being duly sworn upon his oath says : That he is attorney for the plaintiff in the above entitled cause ; that he has read the foregoing complaint, knows the contents thereof, and that the facts therein set forth are true, as he verily believes.

(Signed)          FRED M. ELKIN.

Subscribed and sworn to before me this 21st day of January, 1892.

(Signed)          WILL H. CLARK,

by E. W. Sweeney, Deputy. "

The first ground of demurrer is not well taken. The land was situated in Oklahoma county, and the defendant, so far as we know from the record, was a resident of said county. The townsite had been entered by trustees under the law of the United States applicable thereto, and the lots in question, by them conveyed to the appellee. The United States had no further interest in the land and the interior department no further control as to its disposition.

The second ground for demurrer presents two questions :

*First.* Can a parol contract for the conveyance of real estate or an interest therein, made after the settlement of this country, and prior to the adoption of our organic act, be enforced ?

*Second.* Is a contract for the conveyance of real estate, entered into before title is acquired from the United States, and to be executed after title is acquired, void as against public policy ?

The first proposition seems to be settled by the adjudicated cases and text writers in favor of the appellant.

"Every contract, on whatever subject, may be in oral words which will have the same effect as if written, except when some positive rule of the common or statutory law has provided otherwise." (Bishop on Contracts, S. 153; *Mallory v. Gillette*, 21 N. Y. 412; *Wyman v. Goodrich*, 26 Wis. 21; *Green v. Brookins*, 23 Mich. 48; *White v. Maynard*, 111 Mass. 250.)

By the common law prior to the enactment of the statute of frauds, 29th Charles the Second, chap. 3, A. D. 1676, contracts for the sale of real estate, or an interest therein, were not required to be in writing. (Bishop on Contracts, S. 1231, 4 Kent Com. 450.)

The English speaking people brought the common law to America with them in the first settlement of the colonies and it has prevailed in all the states and territories, modified by legislative acts, local conditions, and such of the English statutes adopted prior to the settlement of our colonies as were of general application and suited to our conditions, except in some portions where the French or civil law prevailed.

At the time of the settlement and discovery of America the statute of frauds had not been adopted and has only become the law of the United States, or of our several states and territories, by legislative enactment. This leads us to the inquiry, "Did the common law prevail in the Territory in April, 1889?"

It is contended that prior to the settlement of Oklahoma, and until the same was superseded by statutory laws, the code Napoleon, or civil law prevailed.

Whatever may have been the laws of the country now known as Oklahoma, they ceased to operate in the region originally comprising the Indian Territory when the Territory ceased to be a part of the Territory of Louisiana and the laws of the Territory of Indiana and the Territory of Missouri, which may have once prevailed in said region, became inoperative in and ceased to have any force or effect in the Indian Terri-

tory when that Territory ceased to be a part of said Territories. (*St. Louis & San Francisco R. R. Co. v. O'Laughlin*, C. C. A. 49 Fed. Rep. 440.)

There was no law in the Indian .Territory regulating the making of contracts at the time of the approval of the Act of Congress establishing a United States district court in said Territory by the Act of March 1, 1889. (25 U. S. statutes, 783.)

Congress, with the assent of the Indians, created the court for the whole of the Indian Territory, which included Oklahoma, and conferred on it jurisdiction in all civil cases between citizens of the United States who are residents of the Territory, or between citizens of the United States or of any state or territory, and any citizen of, or person residing or found in the Indian Territory. It gave the court authority and imposed upon it the duty to apply the established rules and principals of the common law to the adjudication of those cases of which it was given Jurisdiction. (*Pyeatt v. Powell*, C. C. A. 51 Fed. Rep. 551.)

But if it be held that the establishment of a United States court in the Indian Territory did not put the common law in force in said Territory except in so far as was necessary to execute the powers of said court, and for the adjudication of such cases as actually went into that forum, then there was no law in Oklahoma at the date of its settlement regulating the making of contracts.

If this should be conceded, then it necessarily follows on principle that when people from all parts of the United States on the 22d day of April, 1889, settled the country known as Oklahoma, built cities, towns and villages, and began to carry on trade and commerce in all its various branches, they brought into Oklahoma with them the established principles and rules of the common law as recognized and promulgated by

the American courts, and as it existed when imported into this country by our early settlers and unmodified by American or English statutes.

So that in any event, the common law prevailed in Oklahoma at the time the contract between the appellant and appellee was entered into, and as at common law contracts for the sale and conveyance of real estate were not required to be in writing, the contract mentioned in the complaint may be enforced unless void for other reasons.

It is contended that the contract is one for the sale of an interest in public lands, made before the title had passed from the United States, and hence is void as against public policy.

We are aware that some of our courts have adopted this rule, and there are many strong reasons in support of it, but the Supreme Court of the United States in *Lamb v. Davenport*, 18 Wall. 307, said:

"Unless forbidden by positive law, contracts made by actual settlers on lands concerning their possessory rights and concerning the title to be acquired in future from the United States, are valid between the parties to the contract, though there be at the time no act of congress by which title may be acquired."

This case is decisive of the question at issue, and is supported by the ruling of the same court in the case of *Hussy v Smith*, 99 U. S. 20.

There was no positive law at the time this contract was entered into forbidding the sale of town lots by settlers, and the contract was binding in law and may be enforced by a proper proceeding.

The complaint states a cause of action and the demurrer thereto should have been overruled.

The court below erred in sustaining the demurrer to the complaint, and for that error the judgment is reversed at costs of appellee.

The cause is remanded to the  court  below  with in-
struction to overrule the demurrer and for further pro-·
ceedings in accordance with this opinion.

All the Justices concurring.