## SCHMITT *v.* SCHNEIDER.

A woman who cohabitated with a man, rendered to him household services, and delivered to him her earnings, under the belief, induced by his fraud, that the contract of cohabitation between them was the equivalent of a lawful marriage, could not, upon ascertaining that such was not the fact, maintain against him an equitable petition to compel a division with her of property acquired with the proceeds of the earnings of both; nor could

such a petition, when its manifest and only purpose was to obtain relief of the nature just indicated, be treated as an action of assumpsit entitling the plaintiff to a money verdict, merely because it contained some allegations showing a money liability by the defendant to the plaintiff and a prayer for general relief.

Argued December 6, 1899. — Decided January 29, 1900.

Equitable petition. Before Judge Lumpkin. Fulton superior court. March term, 1899.

*Thomas L. Bishop, E. Winn Born,* and *J. A. Hunt,* for plaintiff. *David Eichberg* and *Rosser & Carter* for defendants.

LUMPKIN, P. J.　A petition was filed by Wilhelmina Schmitt, in the superior court of Fulton county, against J. T. Schneider, the Maddox – Rucker Banking Company, the Citizens Loan & Building Company, and certain named individuals. Upon a demurrer filed by Schneider, the petition was dismissed, and the plaintiff excepted. In some way not distinctly disclosed by the record brought to this court, the other defendants were eliminated from the litigation. It is inferable that as to them the petition was voluntarily dismissed. At any rate, the only question argued here was whether or not the petition set forth a cause of action against Schneider, and we shall accordingly deal with this question only. In brief, the petition made the following case: Many years ago, the plaintiff and the defendant both resided in the City of New York, she then having a living husband and he a living wife from whom he had separated. They met and "became infatuated with each other." He falsely represented to her that he had been divorced from his wife. They entered into an agreement to be married as soon as her husband died or she obtained a divorce from him. Meanwhile, she was to keep house for Schneider and take care of his two minor children, who were the offspring of his marriage with the deserted wife. They resided together on these terms for some months in New York, and then moved to Ohio, where for a number of years they sustained similar relations until the death of the plaintiff's husband. They then agreed to live together and cohabit as man and wife, and made a contract to this effect, the defendant falsely and fraudulently rep-

resenting, and she believing, that a formal marriage ceremony was not necessary and that the agreement in question constituted a valid marriage under the laws of Ohio. Finally they moved to Atlanta, and some time after arriving in that city the plaintiff, for reasons set forth, became aware that the alleged Ohio marriage was not valid, and therefore she requested the defendant to have a lawful marriage ceremony performed between them. He refused and she insisted, and at length he informed her that he could not marry her without committing bigamy, for the reason that he had never been really divorced from his wife in New York. She then separated from him, and has not since cohabited with him. During the years she lived with the defendant she rendered him services of a stated monthly value as housekeeper and in conducting a boarding-house and rearing and caring for his children, etc., etc. She also turned over to him nearly all the money, amounting to a specified amount per month, which she earned in her profession of nurse and midwife. In rendering the services mentioned and delivering to the defendant her money, she fully believed she was his lawful wife. From his own earnings and with her means and assistance he has accumulated considerable property and now has a named sum deposited with the Maddox — Rucker Banking Company ; also, stock to a specified amount in the Loan & Building Company, and promissory notes for divers sums mentioned, executed by the individuals named as codefendants, and secured by mortgages on realty. All this property and other assets in the name of the defendant Schneider were "derived from the proceeds of the earnings of this plaintiff and of said defendant jointly." "She has for all of these years been living with him in absolute ignorance of the fact [that he was never divorced from his wife], and now claims that by reason of the fraud he practiced upon her and his misrepresentations that she is entitled to share in the property owned and held in his name, and in equity and in good conscience the court should decree that equal division thereof should be made between them." The prayers of the petition were : (1) for process against all the defendants ; (2) that J. T. Schneider be enjoined "from transferring, using, encumbering, or otherwise intermeddling with any

of his assets or property, as hereinbefore specifically set out or otherwise, until the further order of this court;" (3) "that a receiver be appointed to take charge of, preserve, and hold the assets upon which this plaintiff makes claim, that the same may be properly divided when final judgment is rendered in this case;" (4) that the Banking Company and the Loan & Building Company, as well as each of the individuals named as mortgagors, be enjoined "from paying to the said J. T. Schneider, his agents or attorneys, transferees or assigns, anything or any money in their possession, or anything or money upon the said mortgage debts, as set out in this complaint, until the further order of the court;" (5) that the costs of this case be adjudged against J. T. Schneider; and (6) for general relief.

Taking into view all of the above allegations and prayers, it is clear that the scheme of the petition was to obtain an accounting from Schneider and a division in kind of property alleged to belong jointly to him and the plaintiff. Her object seems to have been to obtain a winding up and settlement of a quasi partnership between them, having its origin in the relations they had sustained towards each other during the years of their cohabitation. Manifestly, in this view of the petition, it was without equity or merit. There was no actual partnership, of course; nor did any trust in the property acquired by Schneider arise for the benefit of the plaintiff. She gave him no money to invest for her individual use, nor was there any undertaking or promise on his part, express or implied, to invest for her or allow her any interest whatever in his accumulations. For her services and for her money which went into his hands he may be liable to pay; but the only relation which could, relatively to these matters, arise between them is that of debtor and creditor. That he may have perpetrated a fraud upon her gives her no title, legal or equitable, to property acquired by him in his own right, although it may have been purchased with his ill-gotten gains; for, to compensate a person upon whom a fraud has been committed, the law affords full relief by providing for the recovery of damages. In this connection, the case of *Millirons* v. *Dillon*, 100 *Ga.* 656, is quite pertinent. Counsel for the plaintiff recognized the soundness

of the views just stated, and, in support of the petition, argued here that it was good solely upon the idea that it contained enough to entitle the plaintiff to a money judgment against Schneider. We do not think the petition maintainable upon this theory. In the first place, it is not a petition to recover an alleged indebtedness by the defendant to the plaintiff, or one for the recovery of damages. It is a petition of a totally different character and for an entirely different purpose, as has been shown. There is no allegation that the defendant is indebted to the plaintiff in any amount, and there is no prayer for a money judgment. It was earnestly insisted, nevertheless, that as the facts alleged showed a money liability, the prayer for general relief was sufficient to support a verdict and judgment for money. Even if by a strain (and it would require a great one) we could hold that the allegations of the petition gave it a standing in court as an action of assumpsit, or for damages resulting from fraud and deceit, it would have to fall for want of an appropriate prayer on that line. A prayer for general relief is good for much, but not for everything. " Where there is a special prayer and a general prayer, the complainant under the general prayer may have such other relief only as is consistent with the case made in the bill and with the special prayer." *Butler* v. *Durham*, 2 *Ga.* 414. "A prayer for general relief, in addition to specific prayers, in a bill in equity, will only warrant the granting relief pertinent to the case made by the bill." *Peek* v. *Wright*, 65 *Ga.* 638. The following, taken from the opinion of this court in *Empire Hotel Co.* v. *Main*, 98 *Ga.* 183, 184, is also applicable here: "A prayer for general relief covers much, but it can hardly be extended so as to authorize relief of an entirely independent nature from that specifically prayed for and forming the basis upon which the plaintiff's petition was framed." What was said in *Tompkins* v. *Cooper*, 97 *Ga.* 631, as to the scope of a prayer for general relief was simply a statement concerning the practice prevailing in Alabama in a particular class of cases, and moreover is, we think, perfectly consistent with the rule announced in the above-quoted extracts. On the whole, therefore, we are very well satisfied that the court below was right in dismissing the present case. *Judgment affirmed. All the Justices concurring.*