## LIBANA DE NOBREGA *v.* SYLVANO DE NOBREGA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 3, 1902.              DECIDED APRIL 7, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

What are *dicta* and what weight should be given to them, discussed.

Under our divorce statute alimony in gross may be awarded.

The granting of alimony is ancillary to the granting of the divorce and great particularity is not required in the prayer for alimony.

In estimating the amount of alimony in gross it is not necessary to use tables of mortality and annuities.

In this case the amount of alimony allowed by the Circuit Court is held to be clearly excessive and the time within which it should be paid too short.

OPINION OF THE COURT BY FREAR, C.J.
(Perry, J., dissenting.)

The Circuit Court upon granting the divorce in this case awarded to the wife as or in lieu of permanent alimony one-half of the husband's real estate in this Territory, but this Court on exceptions (13 Haw. 654) held that under the statute the Court could not order a division of the husband's real estate. The Circuit Court then ordered the husband to pay to the wife within fifteen days $10,000 as alimony in gross. The libellee now brings the case here again on exceptions.

The main contention is that the statute does not permit alimony in gross, and the first question is whether that point is settled by the former decision referred to above. In that decision the majority of the Court, then differently constituted, held (1) that alimony could be granted in gross, but (2) that the hus-

band's real estate could not be divided.   The minority concurred as to the latter proposition but declined to express an opinion as to the former on the ground that no opinion was called for on that question in view of the conclusion reached on the other question.   It is now contended that the opinion expressed by the majority on the first question was mere *obiter dictum.*   Just what are *dicta* and what weight should be given to them have been subjects of some difference of opinion.   "According to the more rigid rule, any expression of opinion however deliberate upon a question however fully argued, if not essential to the disposition that was made of the case, may be regarded as a *dictum.*" Bouv. Dic., Tit. Dictum.   If both questions had been decided in the negative, the opinion on each would have disposed of the case as effectually as the decision on the other and the opinion on each would have been a decision as distinguished from a *dictum.* *Est. of Banning,* 9 Haw. 253; *Hawes v. Contra Costa Co.,* 5 Sawy. 287, (11 Fed. Cas., No. 6, 235).   But the first question was decided in the affirmative and only the second in the negative, and consequently the case was disposed of on the second question only, and the opinion on the first was only a *dictum* according to the more rigid rule above set forth.

But perhaps as important a question as that of whether an opinion is a decision or a *dictum* is that of the weight to be given to it if it is a *dictum.*   To hold that an opinion is a *dictum* is not equivalent to holding either that the court in the particular case acted unwisely in giving it or that no respect should be shown it. There are all shades.   Even an actual decision may be reversed if clearly erroneous.   An opinion expressed after full argument and due consideration upon a doubtful point closely connected with, or apparently though not necessarily involved in a case, should perhaps, on principle, be given greater weight than an actual decision rendered upon little argument and consideration. It should at least be given greater weight than an opinion expressed merely by the way.   See cases *supra.*   There is no doubt a greater tendency now than there was formerly to pass upon questions presented but not necessary to be decided, and doubtless

courts often go too far in that direction. Just how far they should go in any particular case depends largely upon the circumstances of that case. Whether in this instance the court should not have expressed an opinion at the former hearing upon the question now raised, we need not say. There is much that can be said on both sides. Perhaps the strongest reason that can be urged in support of the course pursued is, that the case was to go back to the Circuit Court for further action and that that court would naturally want instructions upon the point in question and that, if such instructions were not given, the case would probably be brought to this court again for the settlement of the question. Under such circumstances, with a view to settling the law of the case once for all, the court would often be justified in going further than it would under some other circumstances. A somewhat similar case was that of *Buchner v. Chicago, M. & N. W. R'y. Co.*, 60 Wis. 264. There, as here, two questions had been presented and the court had decided the first against and the second for the defendant. It was afterwards contended, as it is now contended here, "that it was mere *obiter* to determine the first proposition, by reason of the conclusion reached upon the second proposition." The court considered that a case of *"judicial dictum"* as distinguished from mere *"obiter dictum,"* and said among other things: "To confine this court to the consideration of a single proposition, where several are involved and fully discussed by counsel, might at times operate to prolong litigation, increase the number of appeals, and inflict unnecessary burdens upon both parties and the public, and yet at times it may be highly proper. * * * We do not hold that the finding of the court in the other case * * * is *res adjudicata* in this case; nor that all that was said in that case is absolutely binding upon the parties and the court in this case; but simply that that opinion cannot fairly be treated as merely *obiter*." This reason for taking the course pursued, namely, to avoid further litigation, would not operate so strongly where, as at the former hearing in this instance, the court was not unanimous and was not composed of its regular members, a Circuit Judge sitting in place

of an absent member. Under such .circumstances it would be doubtful whether counsel would be satisfied with the opinion and whether they would not feel justified in bringing the disputed question to the court as differently constituted. Such turned out to be the case.

The question was argued by counsel, including the one who now contends that the opinion upon it was mere *obiter*, was passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended. Under such circumstances the opinion should be given considerable weight, and should not be disturbed if, upon consideration of the merits, the question is found to be one upon which there might well be a difference of opinion and the opinion is found to be not contrary to good policy. Such we find is the case.

As to the question of policy, the fact that alimony in gross is now expressly permitted by statute in many of the states and even in England where the contrary view originated and was adhered to in the courts, some statutes even going so far as to permit a division of the estate *in specie*; the fact that doubtful statutes elsewhere have in a number of cases been so construed; and the fact that this view has often been favorably commented upon and seldom condemned, all go to indicate that there is nothing contrary to public policy to permit alimony in gross. This means, not that an award in gross should usually be made, but merely that there is no sound objection to the existence of the power to award alimony in gross or to the exercise of such power in proper cases. Some courts which hold that such power exists hold also that it should not be exercised except under special circumstances. As a rule the alimony should be payable periodically. The court can then control its amount more effectually and change it from time to time according as the means and needs of the parties change. An award in gross may be made appropriately when the husband is likely to vexatiously delay or

withhold payments, and of course, there are other circumstances to be considered.

As to the law, it will not be necessary to repeat the statute or review at length the authorities cited in the former opinion referred to. Under statutes very similar to ours, it has been held, as pointed out in the former opinion, in California, Illinois and South Dakota, that alimony may be awarded in gross. The Massachusetts cases also are relied on as holding the same way. But it is said that they are distinguishable by reason of the statute being differently worded. That statute contains the words: *"such part of the personal estate* of the husband and such alimony out of his estate," while our statute contains no such words as those we have put in italics. But, as we understand it, alimony is not granted in gross in Massachusetts under the words italicised, for those words permit a division of the estate *in specie,* but the authority relied on there is the other portion of the statute which reads, "alimony out of his estate," which permits an award merely of money, whether payable out of income or estate, and here lies an important distinction. Power to award alimony in gross does not, any more than power to award it as an annuity, permit a division of even personal estate *in specie.* Alimony, whether in gross or periodical, is payable out of income or estate, real or personal, but is not a part of the estate. This distinction is brought out more clearly in the Wisconsin cases under a similar statute. *Bacon v. Bacon,* 43 Wis. 197; *Campbell v. Campbell,* 37 *Id.* 206.

Several words and phrases in the statute are relied on as tending to show an intention on the part of the legislature that alimony should be periodical only. For instance, the allowance is for the wife's "support." The husband may be required to give "reasonable security." Upon his neglect to give such security or make payment, the court may "sequester his personal estate and the rents and profits of his real estate," and cause the same to be applied to the allowance as to the court shall seem just "from time to time." Civ. L., Secs. 1943, 1947. Reliance is placed also upon the general principle that the statute should be

construed with reference to the old rules that obtained in the absence of statute, as, for instance, that alimony was always a periodical allowance. It must be conceded that all these arguments have considerable force, and yet they are not conclusive. Alimony in gross as well as in periodical payments may be for the wife's support. The husband may be required to give security for one kind as well as for the other kind, as time is often allowed for the payment of alimony in gross, and sometimes it is made payable in installments extending over a period of several years, and, besides, this part of the statute, if it were not applicable to alimony in gross, could be applied as far as applicable, that is, to periodical alimony, if applicable to that only. The personal estate and the rents and profits of the real estate could be sequestered as well for alimony in gross as for periodical alimony; and upon this point the distinction above referred to should be borne in mind—that alimony in gross is not a part of the estate either real or personal though payable out of the estate or income. The court may also cause the personal estate and rents and profits of the real estate to be applied to the allowance "from time to time" in one case as well as in the other, so long as payment has not been made, or may exercise the power conferred by the statute so far as it is applicable. We may add that some or all of the words now relied on are found in the statutes of all the states above referred to and yet they were not considered sufficient to show an intention that no alimony in gross should be awarded. The statute, it is true, should always be construed to some extent in the light of the common and ecclesiastical law, and yet this argument loses some of its force from the fact that so great departures have been made from such law in the very statute now in question. For instance, "allowance" and not "alimony" is the word used in the statute. It is authorized in cases of absolute divorce as well as in cases of separation, and in favor of the children as well as in favor of the wife, all contrary to the old practice.

No doubt the general impression here, as shown by the practice, has been that alimony in gross, if not absolutely unauthor-

ized, should at least not usually be granted. Such alimony however has been granted in several cases which have come to this court on exceptions but in which the court was not required to express an opinion upon the point.

On the whole we do not think sufficient cause has been shown for reversing the opinion expressed at the former hearing.

It is contended further that no alimony could be granted for want of a sufficient prayer in the complaint. The prayer of the amended complaint, so far as it bears on this question, was, "That the court order an equitable division of said property between plaintiff and defendant; that she have alimony during such time and in such amount as the court may decree and that defendant be ordered to pay the costs of this action and reasonable counsel fees; and that plaintiff have such other and further relief as to your honor may seem just and proper in the premises." The granting of an allowance is, under the statute, ancillary to the granting of the divorce, and while the prayer could easily be improved so far as permanent allowance or alimony in gross is concerned, it was sufficient.

A further contention is that there was not sufficient evidence to support a decree for alimony, in that it was not shown how much was necessary for the wife's "support" per month or year, &c., or what her expectation of life was. In the nature of things it could not, nor does the statute require it to be shown exactly how much she would need, nor in awarding an allowance in gross was it necessary to estimate the amount by tables of annuities and mortality. The statute provides as to the amount, that it shall be such "as the court shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." Civ. L., Sec. 1943. Courts elsewhere do not seem as a rule to make use of such tables or to require exact proof of the wife's needs in estimating alimony in gross.

Lastly it is urged that the amount is excessive. The amount is largely within the discretion of the trial court, but that discretion can be reviewed as in other cases of discretion, when it is

abused, that is, in cases of this kind, when the amount is clearly excessive. All the circumstances should be considered. There was much difference of opinion among the witnesses as to the value of the defendant's property, which consisted chiefly of real estate. The court placed it at $30,000, basing the estimate principally upon the testimony of one witness, and making no allowance for the fact that that witness estimated the value of the largest tract of land as a whole, irrespective of the fact that the defendant had only a part interest in it and that the title to another tract was defective or at least doubtful. Probably $20,000 would be as large an estimate as could reasonably be sustained on the testimony. The wife owned real estate valued at $3,500 at the lowest, the larger part of which had been given to her by her husband about two years before the action was brought. It did not appear what her needs were, but about a year and a half before the action was brought the parties agreed in writing to live separately, he to pay her $6 a week. She had also some income from her own land. She had contributed some to the earnings of the family before the separation, at times hiring out and at other times assisting in the work of the dairy which he conducted. There were no minor children, the only child being a son twenty-four years old. The divorce was sought and granted solely for adultery during the period of separation. There were no special circumstances of aggravation, the facts, while condemnable enough, as they are in all such cases, being only such as might be expected in any such case. The usual practice is to award not over one third of the husband's income. If he had died she would be entitled by way of dower to only one third of the income of his real estate for her life, besides one third of his personal estate, which in this case amounts to little. But if an allowance in gross is made, she gets it absolutely and not merely for her life. As a rule allowances in gross are less than one-third of the estate, and in estimating the amount the property that the wife already has is taken into account and especially that part of it which came from her husband, and, on the other hand, any contributions she may have made. On the

whole, in our opinion, considering the amount that she already has, the allowance should not exceed $5,000.

We are also of the opinion that the time allowed for payment is too short. The whole $10,000 was ordered paid within fifteen days. The property was not readily salable—by reason of its character and location. Its value was very uncertain. The title to some of it seems to be uncertain. It is doubtful whether $10,000 could be obtained by mortgage, and, if the property had to be sold in order to realize the amount required, it would probably be at a great sacrifice, with the result that while the wife would get only what was ordered the husband would lose a great deal more. In *Farley v. Farley*, 30 Ia. 353, the property was valued at $4,000 and the allowance was $1,300, which was ordered paid, $500 in sixty days, $400 in six months and $400 in nine months. On appeal the court held that the amount was not excessive but that the time for payment was too short. The time was changed so that $300 was payable in ninety days, $500 in nine months, and $500 in eighteen months. The time need not be so long now that the amount is reduced to $5,000 as it should be if it were to remain at $10,000, but it seems to us that at least six months should be given in which to pay the greater part of it, and the defendant may be required to pay interest on it meanwhile.

The exception is sustained, the order excepted to set aside and the case remanded to the Circuit Court for further proceedings consistent with the foregoing views.

*Geo. A. Davis* for libellant.

*J. T. DeBolt* for libellee.

### OPINION OF GALBRAITH, J.

Without assenting to all of the arguments advanced in the foregoing opinion I concur in the conclusion and judgment announced.

For the reasons stated in the opinion heretofore filed by me in this case (13 Haw. 663), I am still of the opinion that the views expressed by the majority at the former hearing on the question of whether or not our statute permits an award of a sum of money in gross as alimony are *obiter dicta* as distinguished from actual decision. The foregoing opinion of the majority contains much in support of this view. What the precise distinction, if any, is between judicial *dictum* and *obiter dictum* or what shades or degrees of *dicta* or decisions there are, I deem it immaterial to consider, for I concede to the *dicta* in this case all the weight and respect to which they are entitled as such. They have not the force, however, of an actual decision. Conceding to the *dicta* the weight and respect due them, I am unable to reach the conclusion expressed by the majority at the former hearing on the main question now before the Court and therefore respectfully dissent. Nor do the circumstances of the case seem to me to be such as to render obligatory the adoption of the former opinion of the majority merely because the statute under consideration may perhaps be regarded as one upon the construction of which there may be a difference of opinion.

The authorities are uniform to the effect that in the absence of statutory authorization and, perhaps, of the consent of the parties, the divorce court is without jurisdiction to decree the payment to the wife of a sum in gross. Alimony, within the strict meaning of that term, that is, an allowance to the wife, for her support, to be paid by the husband at stated intervals, is all that can under those circumstances be granted. No consent of the parties has been shown in this case. The power, then, to decree the payment of a sum in gross, if it exists at all, exists, as held by the majority of the Court, by virtue of the provisions of our statute. Section 1943 of the Civil Laws reads: "Upon granting a divorce for the adultery or other offense amounting thereto, of the husband, the Court may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to pro-

11–D

vide such suitable allowance for the wife, for her support, as the Court shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." It is true that the word "allowance" and not "alimony" is here used and that "allowance" is capable of a broader signification than "alimony." In my opinion, however, the allowance intended by the legislature was, as disclosed by the remaining language of that section and by that of section 1947, alimony within the correct definition of that term. In the first place, it was *for the wife's support* and not for any other purpose. This implies, of course, that it is to cease upon her death, or upon her remarriage, if she remarries. An award in gross cannot be measured in accordance with or justified upon these principles. Section 1947 reads: "Whenever the Court shall make an order or decree requiring a husband to provide for the care, maintenance and education of his children, or for an allowance to his wife, the Court may require him to give reasonable security for such maintenance and allowance; and upon neglect or refusal to give such security, or upon default of him and his surety to provide such maintenance and allowance, the Court may sequester his personal estate, and the rents and profits of his real estate, and may appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate to be applied towards such maintenance and allowance, as to the Court shall from time to time seem just and reasonable." These provisions strongly indicate, it seems to me, that what the legislature had in mind was a periodical allowance. The provision authorizing the Court to require security has reference to a periodical allowance and not to an allowance in gross. Further, the property authorized to be sequestered, to-wit, the personal estate and the rents and profits of the real estate, is directed to be applied towards the allowance as to the Court shall *from time to time* seem just and reasonable. See, in this connection, *Calame v. Calame*, 25 N. J. Eq. 548.

In many of the States statutes have been enacted conferring in express terms the power now under consideration. Decisions of

the courts of those states upon the same or similar questions are obviously of no assistance in this case since they are based upon those statutes. The statute in Massachusetts, (General Statutes of 1860, Chap. 107) upon which the ruling in *Burrows v. Purple*, 107 Mass. 431, is based, differed from our statute in some essential particulars, as, for example, in providing (Section 43) that "the court may further decree" to the wife *"such part of the personal estate* of the husband and such alimony out of his estate as it deems just and reasonable," thus indicating clearly an intent to authorize an award of personal property, at least, in kind and by way of division and thereby aiding the inference that something more than strict alimony was intended. Again, section 44, "When a divorce is decreed for any of the causes mentioned in sections 7 and 10, the court granting it may decree alimony to the wife, *or any share of her estate in the nature of alimony to the husband*," and section 45, "The court may *enforce decrees* made for *allowance, alimony,* or *allowance in the nature of alimony* pending libels, or *upon or after final decrees* of divorce, in the same manner as decrees are enforced in equity." In view of these provisions, the decisions in the Massachusetts cases can not, it seems to me, be invoked in aid of the construction contended for by the libellant.

The statutes in Illinois, California and South Dakota are similar to ours and the decisions cited by the majority from the courts of those states are undoubtedly authorities in support of the conclusion reached by it. The reasoning employed in those decisions is, however, unsatisfactory to me and, with respect, I decline to follow them.

While there may have been others, but two cases in this jurisdiction have been called to my attention in which the trial court made an award in gross, and in each of those cases exceptions were noted and taken to the Supreme Court contesting the power to make the award. The cases, however, were disposed of on other issues.

To say that as a matter of public policy there is no sound objection to the existence of the power to award alimony in gross

or to the exercise of such power in proper cases, furnishes no assistance in the construction of the statute or in the determination of the question as to whether or not the power does exist.

In my opinion, the case should be remanded to the Circuit Court with instructions to decree a periodical allowance for the wife for her support, payable until further order of the Court.