## FUNG DAI KIM AH LEONG v. LAU AH LEONG.

Circuit Court of Appeals, Ninth Circuit.
July 2, 1928.

No. 5360.

**1. Marriage ⬤⟿54—Hawaiian equity court had power to award putative wife share of property jointly ,accumulated by parties to void marriage (Rev. Laws Hawaii 1925, §§ 1, 2462, 2463).**

Under Rev. Laws Hawaii 1925, § 1, declaring common law of England as ascertained by English and American decisions to be common law of territory, except as otherwise provided, and sections 2462, 2463, giving courts equity jurisdiction, where marriage of Chinese persons in accordance with Chinese customs, followed by 35 years' cohabitation as husband and wife, was invalid merely because of failure to comply with statute requiring license, 'court of equity had power to award putative wife a share of the property accumulated by joint efforts of parties, in view of sections 2958, 3017.

**2. Marriage ⬤⟿54—In determining rights of putative wife in property jointly accumulated, each case must be adjudged on own facts and local laws.**

In determining rights of putative wife in property accumulated by joint efforts of parties to void marriage, each case must be adjudged on its own facts and local laws, including consideration of relative contributions of property and personal service in point of value made by respective parties, amount an value of such property when their de facto marital . relation ceased, and amount of property accumulated by putative wife and standing in her name.

Appeal from the Supreme Court of the Territory of Hawaii.

Suit by Fung Dai Kim Ah Leong against Lau Ah Leong. Decree of dismissal was affirmed by the Supreme Court of Hawaii (29 Hawaii, 770), and plaintiff appeals. Reversed, with directions.

Thompson, Cathcart, Beebe & Winn, F. E. Thompson, E. H. Beebe, and Montgomery E. Winn, all of Honolulu, Hawaii, for appellant.

Harry Irwin, of Hilo, Hawaii, and Robertson & Castle, A. G. M. Robertson, A. L. Castle, W. A. Greenwell, and A. Withington, all of Honolulu, Hawaii, for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a decree of the Supreme Court of Hawaii, affirming a dismissal by the circuit court of the appellant's bill of complaint, by which she sought to establish an interest in property held by the appellee. In the opinion below (29 Hawaii 770), may be found a comprehensive statement of the

facts; for our purpose, details are unnecessary.

Both parties are of Chinese blood and nativity. In 1884 plaintiff, a girl 17 years old, came to Hawaii, where defendant was then residing, and after some negotiations a marriage was agreed upon and a wedding ceremony was held, all in accordance with Chinese customs, but without a license, as required by the laws of Hawaii. They immediately assumed, and thereafter for 35 years maintained, the relations of husband and wife. In the course of time the plaintiff bore to defendant 13 children, and, besides performing the domestic duties of a housewife, assisted him in carrying on his mercantile business. Success attended their joint efforts, with the result that at the time of the trial there was an accumulation of several hundred thousand dollars' worth of property. Following a decision of the Supreme Court of Hawaii in 1920 (Parke v. Parke, 25 Hawaii, 397), expressly overruling an earlier decision of that court and holding that a license was prerequisite to a valid marriage, defendant ceased to recognize plaintiff as his wife, and denied her any interest in the property accumulated during the long period they had lived together. That what was done would, in the absence of the territorial statute requiring a license, have constituted a valid common-law marriage, there can be no doubt, and that in believing they were living together in lawful wedlock they acted reasonably finds confirmation in the fact that not only was defendant advised by competent legal counsel that the marriage was valid, but such was the effect of a decision of the highest court of the territory. Godfrey v. Rowland, 16 Hawaii, 377.

Conceding that. "there is great inherent justice in the complainant's claim," the Supreme Court was nevertheless of the opinion that the legal obstacles to its recognition are insurmountable. Under the civil law it was thought little difficulty would be encountered, but under the common law, which prevails in Hawaii, no basis for relief was found. There are but few reported decisions involving questions of the property rights of a putative wife, where for one reason or another the supposed marriage turns out to be void, but in the majority of those which have come to our attention relief of some character has been granted. Buckley v. Buckley, 50 Wash. 213, 96 P. 1079, 126 Am. St. Rep. 900; Knoll v. Knoll, 104 Wash. 110, 176 P. 22, 11 A. L. R. 1391; Powers v. Powers, 117 Wash. 248, 200 P. 1080; Coats v. Coats, 160 Cal. 671, 118 P. 441, 36 L. R. A. (N. S.) 844; Schneid-

er v. Schneider, 183 Cal. 335, 191 P. 533, 11 A. L. R. 1386; Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154; Chapman v. Chapman, 11 Tex. Civ. App. 392, 32 S. W. 564, 68 Am. St. Rep. 376; Fuller v. Fuller, 33 Kan. 582, 7 P. 241; Werner v. Werner, 59 Kan. 399, 53 P. 127, 41 L. R. A. 349, 68 Am. St. Rep. 372; Krauter v. Krauter, 79 Okl. 30, 190 P. 1088 (that Oklahoma is a common-law state, see McKennon v. Winn, 1 Okl. 327, 33 P. 582, 22 L. R. A. 501); Bracken v. Bracken, 45 S. D. 430, 188 N. W. 46; Strode v. Strode, 3 Bush (Ky.) 227, 96 Am. Dec. 211. See, also, note to Deeds v. Strode, 96 Am. St. Rep. 263, 272, 273; on subject "Marriage," by Mr. Chief Justice Harlan, 26 Cyc. pp. 918, 919. (It should be added that the writer on this subject in Corpus Juris, at sections 137–138, vol. 38, expresses a view much less positive.)

In these cases the principles invoked are not always the same, and, it may be conceded, in finding a basis for relief, some of them have put a strain upon statutory provisions the relevancy of which is not entirely obvious. But in all of them there is evinced a purpose to prevent a result so inherently wrong as to shock our common conception of fundamental justice.

Directly to the contrary is Schmitt v. Schneider, 109 Ga. 628, 35 S. E. 145. This was the only decision the court below found to be in point upon that side of the question, but the following may be cited as having some bearing in defendant's favor, though in the main they have to do with questions of the availability of certain specific remedies at law. Bell v. Bennett, 73 Ga. 784; Ward v. Dailey, 118 N. C. 55, 23 S. E. 926; Nicely v. Howard, 195 Ky. 327, 242 S. W. 602; Cooper v. Cooper, 147 Mass. 370, 17 N. E. 892, 9 Am. St. Rep. 721; Stewart v. Vandervort, 34 W. Va. 524, 12 S. E. 736, 12 L. R. A. 50; Ogden v. McHugh, 167 Mass. 276, 45 N. E. 731, 57 Am. St. Rep. 456; De France v. Johnson (C. C. Minn.) 26 F. 891. In the last case, strangely enough, the principle of estoppel was recognized as having efficacy to protect the innocent mortgagee, but not the putative wife, by whom the mortgage was given, though she was equally innocent.

The conclusion of the court below is made to rest upon a statutory provision prescribing as a rule of decision the common law of England, and the assumption that, however harsh and unjust the result, the plaintiff is without remedy under that law. This statute, first enacted in 1892 (section 5, c. 47, Session Laws of 1892), and, with slight amendment, now section 1, Rev. Laws of Hawaii 1925, provides that "the common law of England, as ascertained by English and American decisions, is declared to be the common law of the territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the territory, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage," etc.

It is noteworthy that in its discussion the lower court cites no English decisions declaring the common law of England on the subject, and in the elaborate brief for defendant it is said: "A careful search of the English reports fails to disclose any case where the exact point has been in issue and decided." We may therefore assume that there is no English decision expressly "ascertaining" the common law upon the exact point, and the American decisions are mainly as above noted.

Of the statutory provision the court below said: "This section makes the principles of the common law just as binding on this court as if they were embodied in legislative enactments. We have no more power to change them than we have to change a statute." And it is true, "we lean toward the interpretation adopted by the Supreme Court of the territory, and will not disturb its decision unless there is clear error." Ewa Plantation v. Wilder, 289 F. 664, 670, and cases therein cited. But by the language quoted from the opinion below we do not understand that the court intended to overrule its earlier decisions, and to hold that the courts may not adapt to new conditions, arising out of a different social or economic system, fundamental principles underlying the common law, or adopt a new rule appropriate to a relation unknown to the common law. Such rigidity was not accorded to the provision in Orient Ins. Co. v. Pioneer Mill Co., 27 Hawaii, 698; and in Dole v. Gear, 14 Hawaii, 554, a case involving domestic relations, the court, in speaking of this section, among other things, said:

"The common law consists of principles, and not of set rules. It therefore admits of different applications under different conditions. Moreover, by the terms of our statute it is to be ascertained by American as well as by English decisions. In Morgan v. King, 30 Barb. [N. Y.] 9, the court, in construing a somewhat similar statute, said (at page 13): 'The adoption of the common law, in the most general terms, by the government of any country, would not necessarily require or admit of an unqualified application

of all its rules, without regard to local circumstances, however well settled and generally received those rules might be. Its rules are modified upon its own principles, not in violation of them.' And (at page 14): 'When it is said that we have in this country adopted the common law of England, it is not meant that we have adopted any mere formal rules, or any written code, or the mere verbiage in which the common law is expressed. It is aptly termed the unwritten law of England; and we have adopted it as a constantly improving science, rather than as an art; as a system of legal logic, rather than as a code of rules. In short, in adopting the common law, we have adopted its fundamental principles and modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than by the mere words in which they are expressed.' * * * The common law has been adopted by constitutional or statutory provision or judicial decision in nearly all of the United States. It has been expressly adopted by Constitution or statute in many of the states in which the courts hold that equity has jurisdiction in cases of this kind independently of statute, before such decisions were made, and yet, although the statute does not appear to have been expressly referred to in such decisions, the courts were undoubtedly aware of it, and recognized their general duty to follow the common law, and justified their departure from the English rule in this particular class of cases because of a change of circumstances. We need not consider at length all the changes in circumstances that have been considered as warranting a change in the application of principles of law in such cases. Considerable stress has been laid on the change in the status of married women, and on the fact that we have no ecclesiastical courts which formerly in England had jurisdiction of questions of divorce and most other matrimonial matters. The reasoning that has been advanced in respect to these two changes in conditions, if viewed from the standpoint of strict logic, is not altogether satisfactory on either side of the controversy. * * * At any rate, in view of the American decisions as a whole, as they have been made, we are not required, if we are permitted, by our statute in regard to the common law to follow the old rule."

See, also, Dunnell's Minn. Dig. § 1502; Holmes' Common Law; Cardozo's Growth of the Law, p. 105; Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406; Oppenheim v. Kridel, 236 N. Y. 156, 140 N.

E. 227; Ketelson v. Stilz, 184 Ind. 702, 111 N. E. 423, Ann. Cas. 1918A, 965; Wilson v. Leary, 120 N. C. 90, 26 S. E. 630, 38 L. R. A. 240, 58 Am. St. Rep. 778; Sayward v. Carlson, 1 Wash. 29, 23 P. 830; K. C., M. & B. R. Co. v. Smith, 72 Miss. 677, 17 So. 78, 27 L. R. A. 762, 48 Am. St. Rep. 579.

[1] The precise case we have here could never have arisen under the common law of England, for under - that law the parties would be husband and wife. Besides, plaintiff is seeking relief in a court of equity, and in parity with section 1 above quoted we are to read sections 2462 and 2463 of the Hawaiian Revised Laws of 1925 (which also were considered in Dole v. Gear, supra), where it is declared that the courts of Hawaii "shall have full equity jurisdiction, according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate, and complete remedy at law." If, then, there is "great inherent justice in plaintiff's claim," for what reason shall a court of equity, invested with this broad power, hold itself incompetent to grant her a measure of relief? The parties were qualified to contract marriage; they agreed upon it, and actually established and for 35 years maintained the marital status. The plaintiff fully performed her agreement of marriage up to the point where, because of the law as then interpreted and the acts of defendant, it became impossible for her to go further. The contract of marriage turns out to be invalid only because of a failure to comply with a formality which at the time was not thought to be requisite. Had the parties entered into an understanding by which orally the plaintiff agreed to purchase and pay for, and defendant agreed to sell, a town lot, such an agreement might be invalid under the statute of frauds, for want of the requisite writing. But if, pursuant to the agreement, plaintiff went into possession, improved the lot, and made the stipulated payments, a court of equity would afford her relief.

True, for reasons of public policy, as well as because of defendant's voluntary present disqualification, a court cannot compel performance to the extent of establishing the personal status originally contemplated; but because plaintiff is remediless in that respect, shall the court also deny her a measure of the pecuniary relief she here seeks? In decrees for separate support and maintenance, we have examples of relief respecting the economic side of the marital relation, without destroying the personal status established thereby. The common-law conception

of marital unity by which the identity of the wife was merged into that of the husband has undergone a great change, in some jurisdictions recognized by statutory law, and almost universally by common understanding and assent. If we assume that, as defendant contends, under the common law, in case of a void marriage, the putative wife was without remedy, we should not feel it incumbent to extend such a rule, the reasons for which no longer exist, to a specific case like this, which could never have arisen under the common law.

In common usage, equity protects relationships and vindicates rights not recognized in a court of law, and we are of the opinion that there is here substantial ground for the exercise of its jurisdiction. It may be that plaintiff cannot refer her right to any contractual or trust relation, within the strict legal definition of these terms; but that consideration is not conclusive, for otherwise there would be no place for the growing law of quasi contracts. Technically speaking, there was no partnership, no agreement of trust to cover the plaintiff's money contribution to the business enterprise, and no contract, express or implied, for compensation for her labor and service. But there was the underlying understanding, and the expectation, that she would receive a pecuniary benefit. She looked forward to support and maintenance in the years of her declining capacity to care for herself, which now have come upon her, and in certain contingencies to alimony, or dower. Owing to a mutual mistake of both parties respecting the fact of the existence of a valid marital status, the agreement cannot be fully executed, and plaintiff's expectations cannot be fully realized. We are inclined to think that this is such a mistake as warrants the interposition of a court of equity to grant appropriate relief. Pom. Eq. Juris. (4th Ed.) vol. 11, p. 1704 et seq., particularly pages 1731–1734, 1782; Moore v. Shook, 276 Ill. 47, 114 N. E. 592.

Quasi contractual obligations have been defined as "legal obligations arising without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." Woodward's Law of Quasi Contracts, p. 4; Maine's Ancient Law (4th Ed.) p. 344. The action upon such an obligation "lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition (express or implied). * * * In one word, the gist of this kind of action is that the de-

27 F.(2d)—37½

fendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." Woodward, supra, p. 4; and see, also, pages 295, 296; also Moses v. McFarlen, 2 Burr. 1005.

In commenting on Cooper v. Cooper, 147 Mass. 370, 17 N. E. 892, 9 Am. St. Rep. 721, cited supra, at pages 324 and 325 of Keener on Quasi Contracts, the learned author says: "Had the plaintiff in this case surrendered to the defendant money or other chattels to which the defendant asserted a right because of his marital rights as husband, it does not seem possible that a court would hold that, because of the loss of the right to sue in tort by the death of the intestate, no claim could be asserted against his estate for the value so received by him. And yet in point of principle it is submitted that it is impossible to distingush between the receipt of money or other property by the defendant and the receipt of services. The plaintiff whether she conferred a benefit on the intestate by rendering services, or by delivering to him money or other personal property, in either case parted with a right in rem under a mistaken supposition, induced by the fraud of the defendant, that the defendant was entitled thereto." And "whatever power, therefore, courts of equity possess to prevent and remove the consequences of fraud, they also possess in dealing with the effects of mistake." Pom. Eq. Juris. (4th Ed.) vol. 11, pp. 1782, 1783.

As we have seen, by express statute the courts of Hawaii are clothed with wide equity jurisdiction, and more recently the court, from which comes Cooper v. Cooper, has said: "If our statutes had given jurisdiction of libels for nullity of marriage to courts having full equity powers, there might be some reason for holding that such courts could, as a condition of granting the relief prayed for, require that property brought by the defendant to the plaintiff should be restored to the former, or that an equitable division of any accumulated property should be made"—citing Fuller v. Fuller and Werner v. Werner, supra. Adams v. Holt, 214 Mass. 77, 100 N. E. 1088, Ann. Cas. 1914B, 850.

[2] We conclude that plaintiff is entitled to a measure of relief. Upon the question of what standard should be applied in determining the amount and character thereof, the decided cases, as already indicated, are not in harmony, and perhaps no specific general rule can be formulated. Each case must be adjudged in the light of its own peculiar facts and the local laws. Here, we think, it

will be proper for the court in further proceedings to take into consideration the relative contributions of property, and of personal service in point of value, made by the two parties in the accumulation of the property standing in the defendant's name, the amount and value of such property at the time their de facto marital relations ceased, the amount of property accumulated by plaintiff· during the same period and standing in her name, the local statutes affecting the marital relation and divorce, and alimony and dower, or other pecuniary interests of the .wife, whether absolute or contingent, present or in expectancy. Rev. Laws Haw. 1925, § 3017; Nobrega v. Nobrega, 14 Hawaii, 152). And particularly section 2958 of the Revised Laws of 1925 should be considered. While it covers only a case where a woman has been deceived into contracting an illegal marriage with a man already married, and hence is not specifically applicable, the plight of a woman in such a case is not essentially different from that of the plaintiff here, and hence the relief there authorized furnishes a standard which, while not controlling, may be helpful by way of·analogy.

By suggesting certain considerations, it is not to be inferred that upon further proceedings they should be deemed exclusive. The fact that during the period of cohabitation between the parties hereto the defendant entered into what now turns out to be a legal marriage with another woman may have some bearing upon the question, and other material circumstances may develop at the hearing affecting the equities.

Reversed, with directions for further proceedings not inconsistent herewith.