EMILY ELIZABETH AIKEN *v.* GEORGE S. AIKEN.

No. 1559.

APPEAL FROM CIRCUIT JUDGE SECOND CIRCUIT.
HON. D. H. CASE, JUDGE.

ARGUED FEBRUARY 12, 1925.          DECIDED FEBRUARY 24, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

DIVORCE—*evidence.*

> Upon the evidence in this case the decree of the trial judge dismissing the libel of libellant and sustaining the cross-libel of libellee is affirmed.

OPINION OF THE COURT BY LINDSAY, J.

Libellant filed a libel for divorce on the ground of extreme cruelty, to which libellee filed an answer and cross-libel, praying that he be granted a divorce also on the ground of extreme cruelty. After a protracted hearing and the taking of testimony which is set forth in a transcript of more than six hundred pages, the circuit judge denied the prayer of libellant, dismissed her libel and granted libellee a divorce, from which decree libellant has appealed to this court.

The facts constituting extreme cruelty alleged by libellant are: That while libellant, with the consent and

approval of libellee, was absent from the Territory seeking medical aid for their delicate child and while libellant "was in great mental anguish and weak in body and when she was so much in need of the comfort, strength and encouragement of her husband," the libellee did, without just cause or provocation, write to her and accuse her of being the cause of his being left out of social parties in Wailuku and did accuse and state that she was known as the "Wailuku gossip," and that he would not live with her any more but would seek a divorce, take the children away from her and make no provision whatever for her support; that, during the absence of libellant on the mission of procuring medical assistance as aforesaid for their sick child, libellee failed and refused to keep her supplied with sufficient funds for the maintenance and medical treatment of libellant and her daughter; that libellee kept possession of her securities and that she was destitute and compelled to borrow large sums of money from her brother; that, notwithstanding the foregoing conduct on the part of libellee, libellant did return to the home of libellee for the purpose of forgiving him and with the hope that he would receive her as his wife, but that libellee refused to receive her in his home and did forcibly exclude her therefrom and subjected her to the public humiliation and the mental and physical distress of seeking shelter in a public hotel with her children, and that libellee again told libellant that he would not live with her; that libellee had during their entire married life demanded an unreasonable and excessive indulgence in sexual gratification and that libellee had discussed the intimate relations of their married life in regard to sexual matters with strangers, which being reported to libellant caused her shame and mental suffering; that while Audrey, the infant daughter of the parties, was a year old and known to be a child of defective mentality called "Mongol" and libellant was

suffering from the knowledge of such fact, she was caused great mental anguish by the statements of libellee to her that "ninety per cent. of abnormalities of children were due to the mothers," meaning thereby that libellant was the cause of such defective child, and that all of the foregoing conduct on the part of libellee caused the libellant such extreme mental distress that she was made ill and confined to her bed under the care of a physician for many days.

The material allegations of extreme cruelty set forth by libellee in his cross-libel (we retain the designation of the parties as libellant and libellee in considering both the original libel and the cross-libel) are: That libellant has during the last four years, unreasonably and without sufficient cause, refused to accord to libellee the marriage right of cohabitation; that libellant during said time occupied a separate bed and on numerous occasions when libellee solicited cohabitation refused and suggested and urged him to commit sexual intercourse with other women; that libellant is a woman of ungovernable temper and frequently addressed to libellee the most vulgar, profane and obscene language and epithets and that at times her denunciations and abuse of libellee became so loud as to attract the attention of the servants and the minor son of the parties; that libellant frequently went about the home naked in the presence of the children, servants and others; that on or about the —— day of December, 1922, while libellee was sick and confined to bed libellant refused to nurse or feed him and constantly during his illness and while he was in a serious condition nagged and abused him for becoming ill and incapacitated from attending to his business and earning money, and constantly nagged and scolded him for not carrying a larger amount of life insurance payable to her as beneficiary; that libellant was most slovenly in the care of her person

and kept the upstairs portion of the house in a filthy condition, and that, when he remonstrated with her therefor, she would use violent and profane epithets towards him; and that all of the foregoing acts and conduct of libellant have so affected his peace of mind and his feelings as to impair his health and endanger his life for the future.

The trial judge found that the libellant had not sustained the allegations of extreme cruelty set forth in her libel by a preponderance of the evidence, and we are satisfied by an examination of the evidence that the finding of the trial court was warranted. It remains only to be determined, therefore, whether from the evidence adduced in support of the cross-libel libellee was entitled to a divorce.

The testimony of the libellee was to the effect that for several years the conduct of his wife toward him had been most reprehensible, that she had an ungovernable temper and lost her temper almost daily, hardly a meal passing during which she would not fly into a temper over what he said; that during such fits of temper, both in the house and while out riding in the automobile, she would use vulgar, filthy and profane language (which need not be here repeated); that libellant on several occasions told him to go and get sexual gratification from other women; that she was most untidy in the care of her person and of the upper portion of the house and that when he spoke to her about such things she would tell him to "mind your own damn business," and use other improper remarks toward him; that on two occasions when he was sick in bed libellant took no care of him nor saw to it that he had nourishment suitable for a sick person; that libellant frequently upbraided him for not carrying more life insurance; that this continued course of conduct on the part of libellant made libellee nervous so that his hands trembled and his eyes bothered him to such an extent that it became necessary for him to consult an eye specialist

and to have his glasses changed several times, and incapacitated him from properly carrying on his professional work as a dentist. The testimony of libellee as to the use by libellant of the vulgar and profane language complained of was corroborated by several witnesses, who, by nothing in the record, seem to have been prejudiced or partial. One witness, an insurance man, testified that on one occasion when libellant was home sick and "looking more like a corpse than a live man," the witness came to the house of the parties at the request of libellant who endeavored to have the witness urge libellee to take out a large insurance policy, but that the witness indignantly refused to do so saying that the libellee was not a fit subject for insurance and that it would be impossible to get insurance for him. As to the condition of libellee's health, one witness, the optometrist whom libellee had consulted, testified that he had examined the eyes of libellee several times and found them in such a condition as might have been caused by the nervous condition of libellee, and for that reason, within a comparatively short time, it became necessary to several times prescribe changes of glasses for libellee.

In opposition to the foregoing testimony on behalf of libellee, the libellant testified denying all of the testimony of libellee, and produced a number of witnesses, chiefly composed of persons who had been servants in the house for very short periods of time, whose testimony was most meagre and practically all of a negative nature.

Although the case is here upon appeal and we are required to make our own findings from the evidence as contained in the transcript thereof, we cannot lose sight of the fact that the trial judge heard all of the testimony at first hand and noted the demeanor of the witnesses, and his opinion is, therefore, entitled to much weight. Upon the state of the evidence we are of the opinion that the

finding of the trial judge that the conduct of the libellant towards libellee constituted extreme cruelty entitling him to a divorce is amply sustained, and the decree of the trial judge should not be disturbed.

All other points alleged as error are found to be without merit.

The decree appealed from is affirmed.

*S. B. Kemp* (*Huber & Kemp, A. E. Jenkins* and *Philip L. Weaver* on the briefs) for libellant.

*A. Withington* (*Robertson & Castle* and *Enos Vincent* on the brief) for libellee.