HELEN HUGHES RICHARDS *v.*
ATHERTON RICHARDS.

Nos. 4062 & 4068.

August 19, 1960.

Tsukiyama, C. J., Marumoto, Cassidy, Wirtz
and Lewis, JJ.

492

OPINION OF THE COURT BY MARUMOTO, J.

Helen Hughes Richards, libellant, filed a libel for divorce against Atherton Richards, libellee, on June 30, 1955. In her libel, as originally filed, she sought a decree of divorce from bed and board on the ground of grievous mental suffering inflicted upon her by libellee. In addition thereto, she sought temporary alimony and advancement of reasonable expenses to be incurred for trial, pending the final disposition of the libel. She also sought permanent alimony, attorneys' fees and other expenses of prosecuting the libel over and above advances previously made, and division of property, upon the granting of divorce.

Shortly after the filing of the libel, the circuit judge held hearings to determine whether libellee should be required to pay temporary alimony and to advance reasonable expenses to be incurred for trial. He deferred his decision on temporary alimony upon stipulation of the parties that such alimony might be awarded if after a full hearing of the case the award should be found fair and reasonable. Decision on temporary attorneys' fee was also deferred. However, the judge ordered libellee to advance $500 to libellant for expenses of taking depositions.

In due course, libellee filed his answer denying the allegations of the libel. He also filed a cross-libel in which he sought absolute divorce on the ground of grievous mental suffering inflicted upon him by libellant.

The libel and cross-libel were set for hearing on Janu-

ary 26, 1956. At the outset of the hearing, libellant moved to amend her libel by praying for a decree of absolute divorce, instead of divorce from bed and board, and changing the prayer for division of property to conform to the wording of S.L.H. 1955, c. 77, which amended R.L.H. 1945, § 12226, and is now incorporated in R.L.H. 1955, § 324-37.

Upon the granting of libellant's motion, libellee announced that he would not offer any evidence in support of his cross-libel. The judge thereupon heard so much of libellant's testimony as he deemed sufficient to establish the ground for divorce, and rendered an oral decision dismissing libellee's cross-libel, granting absolute divorce to libellant on the ground alleged in the libel, and reserving the questions of temporary and permanent alimony, expenses of the proceeding, and division of property, for decision at a later date. A decree of divorce conforming to the oral decision was entered on March 14, 1956.

The judge took voluminous evidence bearing on the questions of alimony, expenses of the proceeding, and division of property at extensive hearings held over a period of seven months. Upon consideration of such evidence, he filed a decision in which he made an award of permanent alimony of $600 per month, commencing as of February 1, 1956; an allowance of $3,036.99 for expenses; and a division of household furniture, silver, works of art, and other paraphernalia, whereby the bulk of such property went to libellant. He denied temporary alimony for the period between June 30, 1955, and February 1, 1956, and division of property other than household paraphernalia. The allowance of $3,036.99 for expenses was in addition to the sum previously advanced for the taking of depositions, but did not include attorneys' fees and fee and expenses of expert witness. A supplemental decree of divorce in accordance with such decision was entered on September 27, 1957.

The case is before this court on appeals by libellant and libellee from the supplemental decree of divorce. On these appeals, the propriety of the granting of the divorce is not in question. Nor is there any question regarding the division of household paraphernalia.

On her appeal, libellant charges that the judge erred in entering the decree of divorce before deciding the remaining issues of the case; in denying temporary alimony, temporary and final attorneys' fees, and fee and expenses of expert witness; in failing to award adequate permanent alimony; and in failing to make a division of property other than household paraphernalia.

Libellee, on his appeal, specifies but one error, namely, that the judge erred in ordering him to pay libellant's expenses other than attorneys' fees and fee and expenses of expert witness.

Libellant's charge that the judge erred in entering the decree of divorce before deciding the remaining issues of the case does not present any question for review on her appeal. The decree was entered over libellant's objection. The basis of the objection was that the entry of the decree would cut off libellant's dower, and if libellee should die before the judge decided the remaining issues, libellant would not only be without dower but also be without any relief to compensate for her loss of dower. Such objection is now moot by reason of the entry of the supplemental decree of divorce.

Libellant's charge of error regarding the denial of temporary alimony is well taken. The judge made the monthly payments of alimony retroactive to February 1, 1956. According to the decision, he did so pursuant to the stipulation of the parties. But the stipulation of the parties was that temporary alimony be made retroactive to the date of filing of the request therefor, if it should be found fair and reasonable after a full hearing of the case.

The request for temporary alimony was contained in the prayer for relief in the libel for divorce filed on June 30, 1955. Thus, on the basis of stipulation of the parties, alimony payments should have been made retroactive to June 30, 1955.

Also, entirely apart from the stipulation of the parties, the application of pertinent statutory provision to the facts of this case leads to the same conclusion. This point may be considered in connection with libellant's charge that the judge erred in denying her request for attorneys' fees and fee and expenses of expert witness, and libellee's charge that the judge erred in ordering him to pay libellant's expenses other than attorneys' fees and fee and expenses of expert witness. These charges involve the application of R.L.H. 1955, § 324-34, which reads as follows:

"After the filing of a libel for divorce or separation the judge may make such orders relative to the personal liberty and support of the wife pending the libel as he may deem fair and reasonable and may enforce such orders by summary process. The judge may also compel the husband to advance reasonable amounts for the compensation of witnesses and other expenses of the trial, including attorney's fees, to be incurred by the wife and may from time to time amend and revise such orders."

The foregoing provision is an amendment of R.L.H. 1945, § 12224, made by S.L.H. 1955, c. 79. The original provision read as follows:

"Whenever it shall be made to appear to the judge after the filing of any libel, that the wife is under restraint or in destitute circumstances, the judge may pass such orders to secure her personal liberty and reasonable support, pending the libel, as law and justice may require, and may enforce such orders by summary process. The judge may also compel the

husband to advance reasonable amounts for the compensation of witnesses and other reasonable expenses of trial to be incurred by the wife. The judge may revise and amend such orders from time to time."

In *Nobrega* v. *Nobrega,* 13 Haw. 654, this court construed the original provision as prohibiting the judge from awarding temporary alimony to a wife who owned real property of the approximate value of $3,500, it being of the view that such person could not be said to be in destitute circumstances. For the same reason, in *Yankoff* v. *Yankoff,* 40 Haw. 179, this court reversed an order allowing attorney's fee to a wife who had previously paid more than $1,000 to her attorney and had received $14,000 in property settlement.

S.L.H. 1955, c. 79, eliminated the words "under restraint or in destitute circumstances" from the original provision. Thus, under the amendment, a showing of wife's destitute circumstances is not a prerequisite to an award of temporary alimony or allowance of expenses of trial. The amendment leaves the judge with discretion to make an award of temporary alimony limited only by the standard that it be fair and reasonable. The same is true with respect to expenses of trial.

Under R.L.H. 1955, § 324-34, we think that a wife who has sufficient means to live in her accustomed manner, and to prosecute her libel for divorce, without impairing the capital of her separate estate, is not entitled to temporary alimony or expenses of trial. *Spreckels* v. *Spreckels,* 111 Cal. App. 2d 529, 244 P. 2d 917; *Loeb* v. *Loeb,* 84 Cal. App. 2d 141, 190 P. 2d 246; *Markland* v. *Markland,* 155 Fla. 629, 21 So. 2d 145. But, in our opinion, the statute does not require a wife to impair her capital, and if her income is insufficient for the maintenance of her accustomed standard of living and for the efficient prosecution of her libel, she may be awarded temporary alimony

to supplement her income and may be allowed reasonable expenses of trial. Of course, due consideration must be given to the financial resources of the husband. *Steiner* v. *Steiner,* 254 Ala. 260, 48 So. 2d 184; *Sigesmund* v. *Sigesmund,* 115 Cal. App. 2d 628; 252 P. 2d 713; *Harding* v. *Harding,* 144 Ill. 589, 32 N.E. 206; *Waters* v. *Waters,* 191 Md. 436, 62 A. 2d 250.

In *Harding* v. *Harding, supra,* the husband was a man of great wealth whose net annual income was in excess of $30,000. The wife also owned considerable amount of property, consisting of notes, bonds, and stocks, but her income was less than $1,000 per year. The trial court ordered the husband to pay temporary alimony of $300 per month to the wife for her support, $1,000 for attorneys' fees, and $400 for other expenses. The husband appealed to the appellate court from the order and obtained its reversal. The wife then appealed to the supreme court. In reversing the judgment of the appellate court and affirming the order of the trial court, the supreme court made the following statement, with which we are in accord:

"It would seem equitable and just that the wife, who is prosecuting her suit in good faith, should be placed upon an equality with her husband; and if her income be insufficient to maintain her, and to carry on the litigation, his income should be required to contribute, before she should be required to exhaust her estate. * * * If the income of the wife be sufficient to suitably support her, there will ordinarily exist no reason for making an allowance for that purpose. But if the income of the wife be insufficient, and that of the husband be ample, equitable considerations and the weight of authority requires, as we think, that such a sum should be allowed from the husband's income as will, when added to her own, enable the wife to live comfortably, pending the litigation, in the sta-

tion in life to which he has accustomed her. It is clear that the income of appellant was insufficient to thus support her, and, the income of appellee being ample to properly maintain his family in the station in life in which he had kept them, an allowance for the wife's support was properly made. * * *

"It is also urged that the court erred in allowing for solicitors' fees and other expenses of litigation any sum whatever. What has already been said disposes of the principal objection. Appellee will be able to make a very determined and expensive contest. In order that his wife may have a fair opportunity to present her cause, it is necessary, not only that she be suitably maintained, but she must be enabled to employ counsel, and make proper preparation for trial."

Here, libellant has an annuity which provides her with $656.25 per month. The judge concluded that such monthly sum was, "considering the facts and circumstances of the parties litigant, insufficient to take care of her necessary and suitable expenses for the oncoming years and that this amount should be supplemented by libellee to the extent of $600 a month, and that such award is, pursuant to the stipulation of the parties hereto, retroactive to February 1, 1956."

Such conclusion necessarily implies a finding that periodic alimony of $600 per month was fair and reasonable. We have already noted that the stipulation of the parties was that temporary alimony, if found fair and reasonable, be made retroactive to June 30, 1955. There is no evidence that libellant's financial circumstances after February 1, 1956, were any different from the circumstances during the interval between June 30, 1955, and February 1, 1956. We hold that under the applicable statutory provision, as well as under the stipulation of

the parties, alimony payments should have been made retroactive to June 30, 1955.

The judge denied libellant's prayer for attorneys' fees on the ground that there was no basis for allowing such fees in view of libellant's substantial liquid cash position at the outset of the proceeding. He assigned the same reason for his denial of temporary alimony. The allowance or denial of temporary alimony and temporary and final attorneys' fees to a wife should not depend on the happenstance that the wife kept her funds in cash instead of having the same invested in securities or other forms of investment. Also, it appears that the judge failed to apply his reasoning consistently in this case. If a wife is not entitled to temporary alimony and attorneys' fees by reason of her cash position, the same reason should logically preclude her from obtaining an allowance of other expenses.

But here, despite libellant's cash position, the judge ordered libellee to pay libellant's expenses other than attorneys' fees and fee and expenses of expert witness. The judge gave two reasons for such action, first, that such expenses were expenses reasonably incurred by libellant as a direct and proximate result of the divorce proceeding which stemmed from libellee's misconduct, and, second, that libellant's income was insufficient to enable her to meet her costs of living during the pendency of the proceeding and still pay such expenses without impairing her capital.

We think that the reasons given for the allowance of libellant's expenses other than attorneys' fees and fee and expenses of expert witness are sound and valid. But these reasons are equally applicable to attorneys' fees and require that such fees be allowed. Libellant needed the services of her attorneys in order to assert her rights in the divorce proceeding. The uncontroverted evidence is

that the proceeding arose out of libellee's misconduct. Libellant had no means of paying her attorneys except by dipping into her capital.

With respect to fee and expenses of expert witness, which was item 24 of libellant's schedule of expenses, the judge stated as follows: "Item 24 is an item in the amount of $870.80, payable to Colin G. Lennox for expert witness fees and out-of-pocket expenses for the period of May 3, 1957 [sic] through May 11, 1956 for appraisal of libellee's stockholdings in Kahua Ranch and which stock was acquired prior to marriage to libellant." Other than such statement, the judge gave no reason for disallowance of the item. The implication from the statement is that this item of expenditure was not reasonably incurred because the value of libellee's holding in Kahua Ranch, Limited, was not a proper issue in the case and expert testimony regarding such value was immaterial and unnecessary.

However, at no time did the judge rule that the value of libellee's holding in Kahua Ranch, Limited, was not a proper issue in the case. As a matter of fact, it was treated as a major issue, and more time was spent on it at the hearings than on any other issue. The judge permitted libellant's expert witness to testify over libellee's objection that he failed to qualify as an expert. Five sessions were devoted exclusively to his testimony, which is reported in more than 300 pages of the transcript. After hearing the testimony, the judge ruled: "Now with respect to the appraisal of Mr. Lennox, I have given the matter a very considerable amount of thought, and I have concluded that I would accept the expertness of the witness, and I will consider such arguments advanced by Judge Moore to go to the weight or credibility of the witness; so that I will permit the testimony of the witness to stand." In view of such circumstance, we hold that the expendi-

ture for the witness was reasonably incurred and should have been allowed.

We now come to libellant's charges that the judge erred in failing to award adequate permanent alimony and in failing to make a division of property other than household paraphernalia. These charges involve the interpretation and application of S.L.H. 1955, c. 77, which is incorporated in the first paragraph of R.L.H. 1955, § 324-37, and reads as follows:

"Upon granting a divorce the judge may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, to provide such suitable allowance for the wife, for her support, and to finally divide and distribute the estate, real, personal, or mixed, whether community, joint, or separate, in such proportion as shall appear just and equitable, having regard to the respective merits of the parties, to the ability of the husband, to the condition in which they will be left by such divorce, to the burdens imposed upon it for the benefit of the children of such marriage, and all other circumstances of the case; but no such final division shall impair the power of the court in respect to revision of allowances for minor children. Such decree, as to the custody, management and division of property shall be final and conclusive upon both parties subject only to the right to appeal as in civil cases, and provided that the court shall at all times including the pendency of any appeal, have the power to grant any and all restraining orders that may be necessary to protect the parties and secure justice."

Libellant's contention with respect to periodic alimony is that, under R.L.H. 1955, § 324-37, she is entitled to periodic alimony which, added to her income, will enable her to maintain the standard of living to which she was

accustomed during her marriage to libellee, and that the monthly sum of $600 which was ordered to be paid as alimony is so inadequate that the judge abused his discretion in failing to order the payment of a larger monthly sum.

At the hearings, libellant claimed that the sum required for the maintenance of her accustomed standard of living was $1,813 per month, or $21,756 per year, net after Federal and Territorial income taxes; that she had only $2,400 of "pure income" per year of her own which might be applied to her living expenses, consisting of $600 in bank interest, $200 in dividends, and $1,600 from annuity; that she received $7,875 annually from an annuity provided by her mother but only $1,600 of such annual sum was pure income and the balance was return of wasting asset.

With respect to division of property, libellant contends that she is entitled to a reasonable share of libellee's property, which she claims to be one-third, and that the judge abused his discretion in failing to award such share or, in the alternative, to make an equivalent cash award as property settlement or as alimony in gross. The basis of her claim to such share is that she considers it to be in the nature of a substitute for dower. She argues that her marriage to libellee would not have been dissolved except for libellee's misconduct, that if the marriage had continued she would have been entitled to dower upon libellee's death, and that she is entitled to "receive at least financially that which would have been hers but for the Husband's cruel and inhuman treatment."

Libellant also urges upon us that R.L.H. 1955, § 324-37, makes the personal conduct of a husband toward his wife a material consideration in the determination of the extent of relief thereunder in view of the requirement that the judge have "regard to the respective merits of the parties"

in granting the relief, and, consequently, the undisputed facts regarding the grievous mental suffering inflicted upon her by libellee furnish compelling reasons for the exercise in full measure of the equitable powers under the statute.

We shall begin our consideration of libellant's foregoing contentions with an examination of the relief available under R.L.H. 1955, § 324-37. For an understanding of the nature and scope of such relief, a study of prior statutes and decisions of this court on the subject will be of assistance.

The original statute on the subject was C.C. 1859, § 1328, which provided that upon the granting of a divorce "the court may make such further decree or order against the defendant, compelling him * * * to provide such suitable allowance for the wife, for her support, as the court shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." Under it, the amount of alimony was determined by the circuit court, the determination of the court was reviewed on exceptions, and upon such review the determination had the effect of a jury verdict. *Kilikina* v. *Hake,* 9 Haw. 603; *Laing* v. *Laing,* 10 Haw. 183; *Bartlett* v. *Bartlett,* 13 Haw. 707; *Rickard* v. *Rickard,* 14 Haw. 68.

By S.L.H. 1903, c. 22, jurisdiction over divorce was transferred from the circuit court to the circuit judge at chambers, and henceforth determinations in divorce proceedings were reviewed on appeal as in equity appeals. *De Coito* v. *De Coito,* 21 Haw. 339; *Nishihara* v. *Nishihara,* 22 Haw. 189; *Aiken* v. *Aiken,* 28 Haw. 217; *Will* v. *Will,* 29 Haw. 689; *Medeiros* v. *Medeiros,* 32 Haw. 177; *Smith* v. *Smith,* 39 Haw. 245; *Santos* v. *Santos,* 40 Haw. 644.

There was no further statutory change on the subject until the enactment of S.L.H. 1955, c. 77.

The original statute was construed as being sufficient to authorize an award of alimony in gross, as well as in periodical payments, but not broad enough to sanction an award of specific property in a divorce proceeding. *Nobrega* v. *Nobrega,* 13 Haw. 654; *Nobrega* v. *Nobrega,* 14 Haw. 152.

The amount of periodic alimony was subject to modification for change of circumstance of either party, both by statute and under the decisions of this court. R.L.H. 1955, § 324-37, par. 2; *Lazarus* v. *Lazarus,* 9 Haw. 352; *Laing* v. *Laing, supra; Hart* v. *Hart,* 23 Haw. 639; *Otani* v. *Otani,* 29 Haw. 866; *Farm* v. *Cornn,* 31 Haw. 574; *Miller* v. *Cooke Trust Co.,* 33 Haw. 690; *Smith* v. *Smith, supra.*

On the other hand, alimony in gross was not subject to modification because its award constituted a final settlement of the financial affairs of the parties. *Nobrega* v. *Nobrega,* 13 Haw. 654; *Nobrega* v. *Nobrega,* 14 Haw. 152; *Miller* v. *Cooke Trust Co., supra.*

In *Farm* v. *Cornn,* 31 Haw. 574, 585, a case in which the principal issue was whether periodic alimony was subject to reduction although no power to do so was reserved in the decree, this court made the following statement in answer to the wife's contention that alimony was in lieu of dower and that therefore it became, upon its award, a property right which could not be subsequently disturbed: "In our opinion alimony is not granted in lieu of dower. The latter is a provision made by the law for the support of a wife after the death of the husband. The former is a provision which courts are authorized to make for the support of the wife during the life of the husband. The fact or the quantity of the dower is never affected by the fact whether the wife has or has not had alimony. The fact or the amount of the alimony is never affected by the fact of whether the husband owns or is likely to

own at the time of his death property which is subject to dower."

With regard to the considerations to be taken into account in determining whether periodic alimony or alimony in gross should be awarded, this court stated in *Nobrega* v. *Nobrega*, 14 Haw. 152, 155: "As a rule the alimony should be payable periodically. The court can then control its amount more effectually and change it from time to time according as the means and needs of the parties change. An award in gross may be made appropriately when the husband is likely to vexatiously delay or withhold payments, and of course, there are other circumstances to be considered." It also stated in *Santos* v. *Santos, supra,* at page 647: "An award of alimony in gross accomplishes a more equitable result than periodic alimony in circumstances where a wife has contributed real or personal property owned by her at the time of marriage, or where property has been accumulated after marriage by the joint efforts of husband and wife. In such cases, it is generally held that a wife's contribution should be restored out of the estate of the husband so acquired." However, in the latter case it recognized that there was no criterion which embraced all of the possible circumstances in which an award in gross was proper and that such award "should properly be confined to those cases wherein the presence of special circumstances might require it or render it advisable."

Aside from general statements in *Lazarus* v. *Lazarus, supra,* and *Laing* v. *Laing, supra,* that the amount of alimony rested within the sound discretion of the trial court, and the dictum in *Nobrega* v. *Nobrega*, 14 Haw. 152, 159, that "The usual practice is to award not over one third of the husband's income," no decision of this court provided any specific guide for the determination of the amount of periodic alimony.

Some of the considerations involved in determining the amount of alimony in gross were set forth in *Nobrega* v. *Nobrega*, 14 Haw. 152, 158, where it was stated: "A further contention is that there was not sufficient evidence to support a decree for alimony, in that it was not shown how much was necessary for the wife's 'support' per month or year, &c., or what her expectation of life was. In the nature of things it could not, nor does the statute require it to be shown exactly how much she would need, nor in awarding an allowance in gross was it necessary to estimate the amount by tables of annuities and mortality. The statute provides as to the amount, that it shall be such 'as the court shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case.' * * * Courts elsewhere do not seem as a rule to make use of such tables or to require exact proof of the wife's needs in estimating alimony in gross," and that "As a rule allowances in gross are less than one-third of the estate, and in estimating the amount the property that the wife already has is taken into account and especially that part of it which came from her husband, and, on the other hand, any contributions she may have made."

In *Santos* v. *Santos, supra,* at page 652, this court stated that the last statement in *Nobrega* v. *Nobrega* did not "mandate an inflexible apportionment, but the ratio of the amount of the award to the husband's estate may be considered as one of the primary factors in determining the amount of the award in gross."

Such was the state of the law when S.L.H. 1955, c. 77, was enacted to amend the original statute.

A feature of the original statute, of significance in connection with libellant's contentions regarding permanent alimony and division of property, was that it empowered the judge to order a husband to provide "suit-

able allowance for the wife, for her support" but did not give him the authority to effect a property settlement, as such, in a divorce proceeding. This did not mean that a wife who had a meritorious claim to a share of the property held by her husband, by reason of her contribution to its acquisition or otherwise, was wholly without relief. On the ground that the quoted phrase was broader in meaning than the term "alimony," as known at common law, this court construed the statute as authorizing an award of alimony in gross. *Nobrega* v. *Nobrega,* 13 Haw. 654, 658. Such judicial construction of the statute enabled the judge to give some measure of recognition to the claim of the wife by making an award of alimony in gross based on "the amount, character and reasonable value of the property owned by the husband." *Chong* v. *Chong,* 35 Haw. 385, 395.

However, this court at no time deviated from its position in *Nobrega* v. *Nobrega,* 14 Haw. 152, 156, that alimony, whether periodical or in gross, is not considered a part of the husband's estate and that the "Power to award alimony in gross does not, any more than power to award it as an annuity, permit a division of even personal estate *in specie.*"

S.L.H. 1955, c. 77, was enacted for the sole purpose of enabling the judge to effect a property settlement in a divorce proceeding, thus saving the parties the bother of resorting to a separate civil action to obtain such settlement. It did not change the pre-existing law regarding alimony. The Judiciary Committee of the House of Representatives and the Judiciary Committee of the Senate, Twenty-Eighth Legislature of the Territory of Hawaii, stated:

"1. The purpose of this bill is to confer upon the Judge who grants a final decree of divorce the power to make property settlements between the parties of all

property, real, personal, or mixed, whether held as community, joint or separate property.

\* \* \* \* \*

"3. At present, because of the lack of power by the judge to order property settlements, two or three trials may be necessary before the interests of the parties to a divorce are finally settled. In addition to the trial for divorce, a trial to partition the real estate and a trial to divide personal property may be necessary. Court costs and attorney's fees may mount and much time may be wasted. The provisions of this bill are intended to solve these problems and correct injustices which arise under the present law.

\* \* \* \* \*

"5. This bill will not in any way affect the awarding of alimony. It is the intent of this bill that, depending on all the circumstances, in addition to a property settlement, the aggrieved party may be entitled to alimony." Standing Committee Report No. 356, House Journal 1955, p. 697; Standing Committee Report No. 595, Senate Journal 1955, p. 632.

This statute was inartistically drawn. After empowering the judge to grant two types of relief, namely, an order compelling a husband to provide suitable allowance for his wife's support and an order for a just and equitable division of property, it set forth the considerations to be taken into account in determining the extent of the relief which the judge may grant in the following words: "having regard to the respective merits of the parties, to the ability of the husband, to the condition in which they will be left by such divorce, to the burdens imposed upon it for the benefit of the children of such marriage, and all other circumstances of the case." From the position in which those words are placed, it is not clear whether all of the considerations are applicable to both types of relief, or

whether some are applicable only to one type of relief and some to the other.

Here, our concern is with the phrase "the respective merits of the parties." Libellant's position is that the phrase applies to both types of relief and that it has reference to personal conduct of the spouses toward each other. We think otherwise. We think that in the context in which the phrase is used, it means the merits of the respective claims of the spouses to the property sought to be divided and is pertinent only in connection with division of property. We do not think that it has any reference to personal conduct of the spouses. The phrase is used in statutes of Vermont, Washington, and Wyoming. See Vermont Statutes, Title 15, § 751; Revised Code of Washington, § 26.08.110; Wyoming Compiled Statutes 1945, § 3-5916. In none of these States has it been interpreted to mean personal conduct of the spouses toward each other.

Personal conduct of the spouses toward each other is material to the establishment of a ground for divorce. But it has no bearing on the question as to which spouse has a better claim to the property sought to be divided in a divorce proceeding.

Likewise, personal conduct of a husband toward his wife should have no bearing on the determination of the amount of alimony. Alimony is not awarded as reward for virtue and punishment for wrongdoing. Under the statute, it is a "reasonable allowance for the wife, for her support." The reasonable need of a wife for her future support does not depend on whether her husband was kind or inconsiderate to her in the past. There are statements in *Santos* v. *Santos, supra,* and *Clifford* v. *Clifford,* 42 Haw. 279, that "conduct of the parties" is a consideration to be taken into account in determining the amount of alimony. In neither case was personal conduct of the

husband toward his wife in issue before this court. In *Santos* v. *Santos,* the issue was whether the trial judge determined the amount of gross alimony "with due consideration of the amount, character and reasonable value of appellant's present estate and the ratio of that amount to his net worth"; and in *Clifford* v. *Clifford* the issue was whether the judge had the authority to order a division of property in connection with the granting of divorce from bed and board.

The foregoing discussion disposes of libellant's contention that personal conduct of a husband toward his wife is a material consideration in the determination of the extent of the relief that may be granted under R.L.H. 1955, § 324-37, and we see no need for reviewing the evidence regarding the grievous mental suffering inflicted upon libellant by libellee.

Coming now to libellant's contentions regarding permanent alimony and division of property, we shall first consider the contention with respect to division of property before we take up the contention about alimony. We do so because, as we construe R.L.H. 1955, § 324-37, it empowers the judge to order a division of property independently and without regard to his action on alimony, but, in determining the amount of alimony, it requires the judge to take into account the resources of the wife, including the property apportioned to her in the divorce proceeding.

At the time of the divorce, libellee had under his control, at his residence and in storage at a commercial warehouse, a considerable amount of household furniture, silver, works of art, and other paraphernalia, which libellant thought was worth about $50,000. We shall hereafter refer to all of such property as household paraphernalia.

As is usual with the belongings of any household, there was no clear demarcation of the ownership of the house-

hold paraphernalia as between libellant and libellee. Libellant owned a portion of such property at the time of her marriage to libellee. She valued such portion at $8,897.54. The balance was purchased during the marriage partly with libellant's funds and partly with funds furnished by libellee. Libellant testified that she used her funds "For contributions for living for us, buying furniture, anything that was needed that I could pay for, and my own clothes, and the doctor bills and everything," and also as follows: "Yes, Judge Moore, pictures, art, has been a hobby of my life. I picked out pictures intending to pay for them myself. They had been arranged to be paid for by myself as an investment toward the education of my great nieces and nephews, and they turned out to be good investments."

Libellant claimed all of the household paraphernalia as hers. The judge permitted libellee to keep the items which he needed for his use, valued at $15,000, and awarded the remainder to libellant. Neither libellant nor libellee questions such disposition of libellant's claim.

Also, at the time of the divorce, libellee owned 1605 shares of Kahua Ranch, Limited; other corporate stocks of the value of $99,423; residence valued at $43,500, as to which there was an offsetting liability of equal amount; and personal effects of modest value. Only the Kahua shares require our consideration. Libellee has not made any serious claim to a division of the other items.

With respect to the Kahua shares also, libellant's objective does not appear to be to obtain a division of such shares in kind. At the hearings, she did not offer any persuasive evidence of her contribution to the acquisition of such shares nor did she advance any reason why such shares, or any part thereof, should be specifically awarded to her.

Libellee owned 1200 shares of Kahua at the time of the

marriage. He purchased 405 shares after the marriage. There is evidence that he had sufficient funds of his own to make the purchase. Inasmuch as Kahua has 3200 shares outstanding, the purchase made libellee the majority stockholder of the corporation by 5 shares.

The value of the Kahua shares to libellee by reason of his ownership of a majority of the outstanding shares of the corporation would have been destroyed by an award of as few as 5 shares to libellant. Thus, an award of even a very small fraction of libellee's holdings in Kahua to libellant would have caused a damage to libellee immeasurably greater than any benefit that libellant could have derived from such award. In view of such circumstance, the judge would not have been in error in refusing to order a division of the Kahua shares in kind even if libellant had established a meritorious claim to apportionment of such shares.

Libellant directed her major effort at the hearings not to proof of her right to a division of the Kahua shares in kind but to proof of the value of such shares at the time of the divorce. Libellee valued his holdings in Kahua at $160,500. Libellant asserted a value of $573,937.50. It is obvious that the object of libellant's effort was to lay a basis for a substantial cash award as a property settlement in lieu of a division of the shares in kind.

We think that R.L.H. 1955, § 324-37, empowers the judge to make a cash award in lieu of division of property in kind where a spouse establishes a meritorious claim but specific division is either impracticable or does not bring about a fair and equitable result.

Here, the record does not show that libellant established a meritorious claim to division of property other than household paraphernalia. Except as to household paraphernalia, it cannot be said from the evidence adduced at the hearings that libellant contributed any property of

her own to the building up of libellee's estate or that she lent any effort to the accumulation of any portion of such estate.

Libellant owned considerably more property at the time of the divorce than at the time of the marriage. At the time of the marriage, her property consisted of $25,205.89 in bank deposits; a claim of $12,436.77 against her former husband for insurance adjustments; household paraphernalia which she valued at $25,587.04; and personal jewelry and effects of unspecified value. During the marriage, she acquired additional jewelry and household paraphernalia. At the time of the divorce, she had bank deposits, traveler's checks, United States Treasury bonds, and current credits which totaled $42,045.04; securities of the approximate value of $4,827; and personal jewelry of a market value of $52,925 and a replacement value of $83,140. The judge apportioned to her in the divorce proceeding household paraphernalia of the approximate value of $35,000.

Libellant argues that, although she might not have contributed directly to the acquisition or accumulation of libellee's estate, other than household paraphernalia, she is entitled to a substantial cash award as a property settlement because she assisted in the conservation of such estate to the extent that she used her funds to pay the living expenses which libellee was bound to provide.

We see at least two difficulties in libellant's argument. First, it assumes that libellee was legally obligated to provide the entire sum which the parties expended for their living during the marriage. During the period of the marriage, libellant had cash receipts of $225,264.81 from sources not attributable to libellee, as follows: $138,490.05 from annuity; $82,004.42 as salaries, bonuses, and perquisites from Reader's Digest; and $4,770.34 from dividends and stock sales. Libellant used the receipts to

pay part of her living expenses and to purchase furniture. Also, during the same period, about $400,000 of libellee's funds was used to defray the living expenses of the parties. Such evidence merely indicates that the parties lived expensively. It is no proof that libellee had the legal obligation to pay all the expenses of such living. Second, there is no proof that libellee's estate was conserved by the manner in which libellant used her receipts. If the living expenses of the parties during the period of the marriage exceeded their joint income, which remained after the payment of Federal and Territorial income taxes, libellee's estate would not have been preserved. The record is devoid of evidence showing the amount of the aggregate net income of the parties during the marriage. There is evidence that at least since 1948, the living expenses of the parties exceeded their joint net income and that libellee expressed his concern about the situation to libellant.

We shall now turn to libellant's contention regarding the periodic alimony awarded by the judge. Here, the question is whether the monthly sum of $600 which was ordered to be paid as periodic alimony was so inadequate that we can say that the judge abused his discretion in failing to order the payment of a larger monthly sum.

As we noted previously, libellant claimed at the hearings that she needed $1,813 per month, or $21,756 per year net after Federal and Territorial income taxes, to live in the manner to which she was accustomed during the marriage. She conceded that $2,400 of her income was applicable to her living expenses. Even with such concession, an alimony of at least $50,000 per year, or more than $4,000 per month, would have been required to provide libellant with a net sum of $21,756 after the payment of Federal and Territorial income taxes under the existing rates. But libellee's income was considerably less than such required amount. Libellant figured libellee's

total annual income at the time of the divorce to be $29,855.55. Libellee figured it to be $28,737.49. In either case, the figure is close enough to $30,000, and so we shall assume that libellee's total annual income was $30,000 for the purpose of further discussion.

From such total annual income of $30,000, libellee was required to pay alimony of $300 per month, or $3,600 per year, to his first wife. Under the supplemental decree entered in the instant case, he was required to pay alimony of $600 per month, or $7,200 per year, to libellant. These payments would have left $19,200 before Federal and Territorial income taxes. The net balance left to libellee after the payment of such taxes would have been approximately $13,000.

At the time of the divorce, libellant had a total annual income of $15,875, including the alimony awarded in this divorce proceeding. Such income consisted of the following items: annuity, $7,875; interest, $600; dividends, $200; and alimony, $7,200. With respect to the annuity of $7,875, we reject as being without merit libellant's argument that only $1,600 was pure income and the balance was return of wasting asset. If Federal and Territorial income taxes were deducted from such total annual income of $15,875, libellant would have had approximately $11,500 left for her living expenses.

In other words, the alimony of $600 per month, or $7,200 per year, added to her other income, provided libellant with a net sum of approximately $11,500 per year available for her living expenses as compared with a net sum of approximately $13,000 per year available to libellee. The amount of alimony which was awarded to libellant was not a liberal allowance. We think it was on the low side. But, our function here is limited to a review for abuse, and considering all the circumstances as they appear in the record, we cannot say that the judge abused

his discretion in not awarding a larger alimony.

Libellant based the amount of periodic alimony she claims on the scale of living of the parties during their marriage. The parties were married in 1938. At that time, libellee was president of Hawaiian Pineapple Company, Limited, and had an annual income of more than $125,000, of which approximately $70,000 was from salary and bonus and the balance was from dividends. His net worth was $941,000. The parties lived on a scale commensurate with libellee's income. Three years later, libellee was let out as president of the company, and his income was drastically reduced. Thereafter, he suffered business losses in excess of $640,000. Nevertheless, the parties continued to live expensively to the time of the divorce. In the last years of the marriage, the expenditures for such living which were paid out of libellee's funds exceeded his income.

It is frequently stated as a general proposition that a wife, who is divorced by reason of her husband's misconduct, is entitled to live in the manner to which she was accustomed during the marriage and that the divorced husband is obligated to provide the funds required for such living. The statement is too broad to be true in all cases. The amount of alimony is to be determined upon a realistic appraisal of the situation of the parties at the time of the divorce. Such appraisal involves a consideration of the respective resources and revenues of the parties, their accustomed manner of living, and the manner of living which is appropriate on the basis of such resources and revenues. We think that normally the principal consideration in determining the amount of periodic alimony should be the respective income of the parties. There may be situations which require consideration of factors other than income in arriving at a just result, such as where a substantial portion of the capital of

either party is kept in non-productive form, or where either party, though in good health, malingers or otherwise fails to use his or her talent in income-producing endeavors. Also, ill health of either party may require extraordinary medical expenses which justify an invasion of capital.

Here we cannot say that libellee's capital was not properly employed in income-producing enterprises and investments, nor can we say that libellee avoided the use of his personal talent to advantage in earning income. There is evidence that libellant was in poor health and was hospitalized immediately before the divorce, but the evidence was insufficient to establish libellant's continuing future need for hospitalization and other medical expenses.

Libellant argues that the judge should have made a larger award because, in addition to his actual income, libellee enjoyed "the possibility of prospective income of a very substantial nature." She also argues that a larger award should have been made because of her precarious health which required frequent and lengthy hospitalization in the past. In answer to such argument, it suffices to say that they are based on conjecture. If the possibility of libellee's prospective income or the concern about libellant's need for future medical expenses materializes, it will be time enough for the judge to order appropriate relief upon such change of circumstance.

Libellant urged in her brief that the evidence in this case justified an award of a liberal alimony in gross as an alternative to periodic alimony and division of property. A short answer to such proposition is that the record does not show that it was presented to the circuit judge. Libellant specifically prayed for "a reasonable sum of money each month as permanent alimony" in her libel. Even if the proposition were presented to the judge, its rejection would not have constituted reversible error.

Periodic alimony is generally preferred over alimony in gross because it allows the judge to "control its amount more effectually and change it from time to time according as the means and needs of the parties change." *Nobrega* v. *Nobrega,* 14 Haw. 152, 155.

The supplemental decree of divorce appealed from is affirmed, except insofar as it denies temporary alimony, attorneys' fee and fee and expenses of expert witness. The case is remanded to the circuit judge with direction to amend the decree (1) to make the payment of periodic alimony of $600 per month retroactive to June 30, 1955; (2) to allow the payment of the fee and expenses of Colin G. Lennox; and (3) to award reasonable attorneys' fees incurred by libellant in this proceeding after holding a hearing on the matter.

*William W. Saunders (Lewis, Buck & Saunders* on the briefs) for libellant-appellant cross-appellee.

*Willson C. Moore and Willson C. Moore, Jr. (Willson C. Moore and Robertson, Castle & Anthony* on the briefs) for libellee-appellee cross-appellant.