ROSITA SAROMINES, Plaintiff-Appellant, *v.* ALFONSO A. SAROMINES, Defendant-Appellee

NO. 7788

(FC-D NO. 98857)

FEBRUARY 11, 1982

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Plaintiff-Appellant (Wife) appeals the family court's modification of her entitlement to spousal support which the family court had awarded by a consent decree filed three years previously. We reverse.

The parties married on July 30, 1949. Wife filed a complaint for divorce on September 21, 1976. Although husband's Appearance and Waiver was filed prior thereto, the uncontested divorce was granted on the basis of a Decree of Absolute Divorce, dated November 16, 1976, which had been approved by both parties.

Pursuant to the decree, wife was awarded the 1975 two-door Nova automobile. Husband was required to pay a Hawaiian Airlines Federal Credit Union debt of $6,500 ($4,500 related to the automobile and $2,000 to general family expenditures). Husband testified that of an $11,000 joint savings account, $1,000 was received by him, $2,000 by wife, and $8,000 was used to pay the down payment and closing costs for a two-bedroom condominium apartment at 1138 Hassinger Street.[1] The decree specified that husband and wife would own the apartment as tenants-in-common but that wife "shall have exclusive possession of said condominium unit as long as she desires to remain there" with husband paying the principal and interest payments and wife paying the real property taxes, maintenance fees, and insurance. The decree required husband to maintain a medical and dental plan for wife and to pay all of wife's medical and dental expenses not covered by the plan. No mention was made of retirement benefits, if any.

On February 12, 1977, husband married Doris, who had assets, including a house, which she had been awarded upon her prior divorce, and who is employed.[2]

On September 11, 1979, husband moved for an order relieving him of paying for the mortgage payments and wife's medical and dental expenses. After a hearing on the motion, the trial court entered the following findings of fact and conclusions of law, *inter alia:*

### FINDINGS OF FACT

15. Defendant has had difficulty in making ends meet financially and has had to rely considerably upon the earnings and assets of his present wife as a result.

---

[1] Husband's testimony indicates that the parties had contracted to purchase this apartment prior to their decision to terminate their marriage.

[2] Husband testified that Doris is paid a "little over six dollars an hour." Six dollars per hour computed on a 40-hour week is $1,040 per month.

16. Plaintiff has had no difficulty in making ends meet financially and is the sole occupant of a two bedroom condominium apartment.

17. The Plaintiff stipulated in court that the subject principal and interest payments and the medical and dental payments are for the support and benefit of Plaintiff and therefore should be considered as alimony.

### CONCLUSIONS OF LAW

2. There has been a substantial and material change in circumstances of the parties, financial as well as otherwise, since the Decree of Absolute Divorce was entered on November 16, 1976.

3. Plaintiff is able to substantially rehabilitate herself and has had more than a reasonable time within which to rehabilitate herself and has also rehabilitated herself to such an extent that she is able to pay a portion of the mortgage payments and all of the medical and dental expenses.

4. Plaintiff is fully able to meet her needs independently.

By order dated December 12, 1979, the court amended the decree to require husband and wife to each pay one-half of the principal and interest on the Hassinger Street apartment mortgage and of the real property taxes thereon and to relieve husband of the obligation to pay for wife's medical and dental expenses. Wife contends the lower court erred when it modified the decree.

At the time of the decree,[3] husband was age 50 and wife was 47; husband was an assistant cargo manager at Hawaiian Airlines with 24 years of service and wife was a stock counter clerk at J. C. Penney Co., Inc., with seven years of service; husband's gross salary was $1,600 per month and wife's was approximately $700 per month. Assuming the percentage of ordinary payroll deductions to have been 30 percent,[4] husband's monthly net income was $1,120 and wife's was $490.

At the time of the decree, the parties' two youngest children (twin girls, then ages 23) were living with wife. One married and moved

---

[3] The record at the time of the divorce does not contain much relevant information. Many of the missing facts were provided at the modification hearing.

[4] This percentage is derived from an analysis of both husband's and wife's income and expense statements filed for the modification hearing.

out in 1978 and the other married and moved out in early 1979.

At the time of the decree, husband had been in the Hawaiian Airlines' pension plan for 24 years and wife had been in the J. C. Penney's pension/profit sharing plan for seven years.

Husband agreed to a divorce decree requiring him to pay the $6,500 Hawaiian Airlines Federal Credit Union debt, the principal and interest payments on the Hassinger Street apartment, and wife's medical and dental expenses. We do not know what the required monthly credit union payment was, but we know that husband was later required to pay no less than $237 per month on a similar size indebtedness to the same creditor; we know that the principal and interest payments are $371 per month; and we know that husband has been paying wife's medical and dental bills in the amount of $20 per month even though wife, and not husband, has been maintaining insurance to cover some of them. Thus, at the time of the divorce, even though he only had $1,120 per month to spend, it appears that husband agreed to pay a $371 mortgage payment, a $237 credit union payment, and a $20 medical and dental expense payment. If our assumptions are correct, husband was left with only $492 per month for all of his personal expenses, including housing.

On the other hand, wife was left with a discretionary income of $490, which she did not have to use for housing (except maintenance and insurance) or for medical and dental expenses.

After the decree, husband paid $371 per month on the condominium but wife maintained a $100 annual deductible medical and dental insurance plan through her employer at $8.50 per month while husband paid only the uninsured portion.

We do not know what Doris' income was when she and husband married, but at the time of the modification hearing, her gross income was approximately $1,040 per month. Applying a 30 percent ordinary payroll deduction factor, her net income was approximately $728 per month. We deduce, therefore, that at the time they were married, husband's and Doris' combined discretionary income was approximately $1,220 per month.

Even though Doris already owned a house and notwithstanding their limited combined discretionary income, husband and Doris in November 1977 purchased a fee residence at 98-1475A Kaahumano Street. The record does not reveal its cost but it does indicate that the Hawaiian Federal Savings and Loan mortgage of $49,685.91 (at

$528 per month) and the Hawaii Thrift and Loan mortgage of $21,311.69 (at $309 per month) were both incurred to purchase it. Husband and Doris also each purchased a car with money borrowed from their respective credit unions. It is obvious how husband and Doris got themselves into the financial situation they were in at the time husband sought modification.

The evidence showed husband's and Doris' outstanding debts at the time of the modification hearing as follows:

| Creditor | Security | Total Balance Owed | Minimum Monthly Payment |
|---|---|---|---|
| *Husband/Wife:* | | | |
| Hawaiian Federal S&L | 1138 Hassinger Apt. 401[5] | $45,114.20 | $371.00 |
| *Husband/Doris:* | | | |
| Honolulu Federal S&L | 98-1475A Kaahumano[6] | $49,685.91 | $528.00 |
| Hawaii Thrift & Loan | Doris' premarital residence[7] | 21,311.69[8] | 309.00 |
| J. C. Penney Co. | | 361.00 | 35.00 |
| Sears, Roebuck & Co. | | 540.22 | 35.00 |
| Bank of Hawaii VISA | | 686.86 | 40.00 |
| First Hawaiian Yes Check | | 715.19 | 40.00 |
| Western Airlines | | 172.00 | 20.00 |
| *Doris Alone:* | | | |
| Hawaiian Telephone FCU | 1973 Plymouth | $ 8,672.51 | $198.00 |
| *Husband Alone:* | | | |
| Hawaiian Memorial Life Plan Ltd. | | $    89.00 | $  13.00 |
| Hawaiian Memorial Park Cemetery Association | | 84.00 | 12.00 |
| Hawaiian Airlines FCU | 1974 Pinto | 6,343.67 | 237.00[9] |

---

[5] Husband's estimated gross value of this apartment was $85,000.00.

[6] Husband and Doris reside at this residence. Husband's estimated gross value of this residence was $70,000.

[7] We do not know the value of this residence nor do we know what economic benefit or detriment, if any, it is to Doris and husband.

[8] The proceeds of this loan were used in the purchase of the Kaahumano Street residence.

[9] Although husband testified that $237 was only half of the monthly payment, we render this opinion on the assumption that $237 was the full monthly payment.

At the modification hearing, husband's position was that Doris' income and expenses and assets and liabilities were not relevant to these proceedings. Thus, he claimed one-half of the "Husband/Doris" debts, all of the "Husband Alone" debts, and none of the "Doris Alone" debts. He also claimed one-half of the monthly utilities (1/2 x $140) and one-half of the monthly expenses for operation, maintenance, and insurance of the two cars (1/2 x $170). Thus, he claimed a payout of $920.50 per month prior to payment of his living expenses, wife's medical and dental expenses, and the Hassinger Street apartment mortgage; and that he and Doris together pay out at least $1,777 per month prior to payment of their living expenses, wife's medical and dental expenses, and the Hassinger Street apartment mortgage.

At the time of the modification hearing, the evidence showed husband's gross salary to be $2,056 per month and his net after ordinary payroll deductions to be $1,397.42 per month. Thus, at the time of the modification hearing, husband's and Doris' combined net income was approximately $2,125.42 per month.

At the time of the modification hearing, wife's gross income was $996.66 per month and her net after ordinary deductions was $668.72. Her debts were as follows:

| | |
|---|---|
| J. C. Penney Co. | $299.49 |
| Bank of Hawaii VISA | 279.31 |
| First Hawaiian Yes Check | 700.00 |
| Beneficial Finance | 587.52 |

She was putting aside $19.75 per week ($85.58 per month) for savings bonds[10] and $13.80 per week ($59.80 per month) into her profit sharing plan. With husband paying the mortgage and some of her medical and dental expenses, she was able to show a balanced monthly income and expense statement by reporting her monthly expenses as follows:

| | |
|---|---|
| Real property taxes and insurance | $ 32.00 |
| Utilities | 114.57 |

---

[10] Wife's Asset and Debt statement of September 18, 1979, shows that she owned savings bonds of a market value of $150. At $19.75 per week, it would take her only eight weeks to purchase bonds with a market value of $150. Either she had not been purchasing them for a long period of time or she was cashing them in.

Car operation, maintenance,
repair, insurance ........................... 70.00
Monthly payment on personal loans .............. 97.00
Food ........................................ 100.00
Miscellaneous ................................ 40.00

In deciding this appeal, we operate within the following considerations:

1. The trial judge's findings of fact shall not be set aside unless clearly erroneous. Rule 52(a), Hawaii Family Court Rules.

2. The decisions of a family court judge in domestic relations matters will be set aside only where there has been a manifest abuse of the judge's wide discretion in such matters. *Ahlo v. Ahlo,* 1 Haw. App. 325, 619 P.2d (1980).

3. The division of property issue is res judicata. Hawaii Revised Statutes (HRS) § 580-47 (1976, as amended). Whatever unfairness there may or may not have been in that aspect of the case is not relevant to the spousal support issue. However, the financial resources of the parties after the division of property may be relevant to the spousal support issue. *Richards v. Richards,* 44 Haw. 491, 355 P.2d 188 (1960).

4. There is much controversy nationwide concerning modification of court-ordered spousal support.[11] Hawaii has settled some but not all of the problems in this area. At all times relevant in this case, HRS § 580-47 provided that the movant may be granted a hearing upon a showing of a material change in the physical or financial circumstances of either party or upon a showing of other good cause. It further provided that after considering all proper circumstances and for good cause shown, the court may amend or revise any spousal support order.

5. When the decree of divorce was filed, HRS § 580-47 authorized the court to order spousal support "as shall appear just and equitable" and required it to "take into consideration the

---

[11] *See* Note, *Domestic Relations: Modification of Future Alimony Payments Due to Changed Circumstances,* 20 WASHBURN L.J. 66 (1980-81); Notes, *Modification of Spousal Support: A Survey of a Confusing Area of the Law,* 17 JOURNAL OF FAM. LAW 711 (1978-79); Carey, *Reduction in Alimony as a Result of Changes in Financial Condition: A Guide for the Practitioner,* 15 JOURNAL OF FAM. LAW 300 (1976-77).

respective merits of the parties,[12] the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case. . . ." (Footnote added.)

By the time the motion for modification was filed, Act 77, 1978 Session, had added the following:

In addition to any other relevant factors considered the court, in ordering spousal support and maintenance, shall consider the following factors:

to meet his or her needs independently;

(2) Ability of the party seeking support and maintenance to meet his or her needs independently;

(3) Duration of the marriage;

(4) Standard of living established during the marriage;

(5) Age of the parties;

(6) Physical and emotional condition of the parties;

(7) Usual occupation of the parties during the marriage;

(8) Vocational skills and employability of the party seeking support and maintenance;

(9) Needs of the parties;

(10) Custodial and child support responsibilities;

(11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance; and

(12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made.

(13) Probable duration of the need of the party seeking support and maintenance.

The court may order support and maintenance to a party for an indefinite period or until further order of the court; provided that in the event the court determines that a specific duration wholly or partly based on a competent evidence as to the amount of time which will be required for the party seeking support and

---

[12] "[T]he respective merits of the parties" is pertinent only in connection with division of property. *Richards v. Richards*, 44 Haw. 491, 355 P.2d 188 (1960).

maintenance to secure adequate training, education, skills, or other qualifications necessary to qualify for appropriate employment, whether intended to qualify the party for a new occupation, update or expand existing qualification, or otherwise enable or enhance the employability of the party, the court shall order support and maintenance for a period sufficient to allow completion of the training, education, skills, or other activity, and shall allow, in addition, sufficient time for the party to secure appropriate employment."

With those considerations in mind, the question confronting us is what is "good cause" to modify court-ordered spousal support? We will try to provide some answers.

First, it must be accepted that a spousal support modification hearing is not a review hearing or a rehearing of the original hearing. It is a new hearing based on changed circumstances. *Sims v. Sims,* 34 Haw. 237 (1937).

Second, it must be accepted that all of HRS § 580-47's then applicable factors were considered when the initial determination was made, and with that fact in mind the burden is upon the moving party to prove his or her entitlement to a modification.

Third, the receiving party is always under a duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage and will not be allowed to benefit from the consequences of a violation of that duty. *Lumsden v. Lumsden,* 61 Haw. 338, 603 P.2d 564 (1979); *Richards, supra.*

Fourth, the paying party is always under a duty to exert reasonable efforts to maintain his or her ability to pay what he or she has been required to pay and will not be allowed to benefit from the consequences of a violation of that duty. *Lumsden, supra; Richards, supra.*

When the parties were divorced, husband's gross salary was $1,600 per month and Wife's was approximately $700 per month. At the time of the modification hearing, husband's gross salary was $2,056 per month and wife's was $996.66 per month. Adjusted for inflation, the income situation at the modification hearing was very similar to the income situation at the divorce hearing.

Wife's overall situation does not appear to have improved. Her financial statements showed that she had gone into debt and that she had only $140 per month to spend for her food, clothing, and

personal needs. Based on the record before us, we question the lower court's finding that wife "has had no difficulty in making ends meet financially" and its conclusion that she has partially "rehabilitated herself." In the circumstances of this case, we find nothing unreasonable about her concern for her retirement years and her allocation of some income to that account. Nothing in the record indicates that she violated her duty to expend reasonable efforts to attain self-sufficiency at the standard of living established during the marriage.

On the other hand, the record suggests that husband may have violated his duty to expend reasonable efforts to maintain his ability to pay. We recognize his right to marry again. *See Wright v. Wright,* 1 Haw. App. 581, 623 P.2d 97 (1981). However, we question whether he satisfied his obligation to exert reasonable efforts to conduct his financial affairs within the general confines of the obligations imposed upon him by the decree of divorce.

Moreover, the lower court erred when, without a full examination of Doris' income and expenses and assets and debts, it found that husband "has had difficulty in making ends meet financially and has had to rely considerably upon the earnings and assets of his present wife as a result."

We hold that the record does not support the lower court's findings and conclusions and decision. We find clear error and an abuse of discretion. However, the record does not provide a sufficient basis for us to rule in favor of wife. Consequently, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

*George K. Noguchi* on the briefs for plaintiff-appellant.

*Clesson Y. Chikasuye* on the briefs for defendant-appellee.